## Railroad *v.* Greer.

### (*Jackson.* May 28, 1889.)

1. Agent. *Negligence. Liability to principal. Intervening cause.*

   An agent may be liable to his principal for loss occasioned by his misconduct, although such misconduct is not the direct cause of the loss, and the loss was immediately attributable to the intervention of third parties.

2. Negligence of other Servants the Direct Cause.

   One may employ a servant for the express purpose of protecting himself from loss that may arise from negligence of his other servants, and if such employe negligently and in violation of his duty puts his principal in an attitude whereby loss occurs through negligence of his other servants, and such loss could not have arisen had such duty been performed, then such employe is liable to his employer for such loss.

3. Insolvency of Agent. *Quia timet.*

   If the employer is being sued by a third party, who, by the misconduct of his employe, was put in a position where he was injured by the negligence of the employer's other servants, and the putting of the person injured in such position created such relations between him and the employer as would make the employer liable for such injuries, and if the derelict employe, being insolvent, is about to collect of his employer a judgment, then the collection of so much of the judgment as equals the amount claimed by the injured person of the employer will be enjoined until the liability of the employer and the consequent liability of the employe be ascertained.

   Cases cited and approved: Parker *v.* Britt, 4 Heis., 249; Baird *v.* Goodrich, 5 Heis., 20; Miller *v.* Speed, 9 Heis., 200; Henry *v.* Compton, 2 Head, 249.

---

### FROM SHELBY.

---

Appeal from Chancery Court of Shelby County.
B. M. Estes, Ch.

POSTON & POSTON for Railroad.

PITTS, HAYS & MEEKS. for Greer.

J. M. DICKINSON, Sp. J. The bill charges that defendant Greer recovered a judgment in this Court for eight thousand dollars, for personal injuries, against complainant, the Memphis and Charleston Railroad Company, and that defendant is about to enforce the collection of the same; that Greer was, at the time of the injury for which he recovered said judgment, in the employ of complainant as a freight conductor in charge of a freight train; that there was, at this time, a rule of said company in force prohibiting any person from riding on its freight trains, unless by special permit from the superintendent or train dispatcher, and that this rule was known to Greer; and that it was his duty, as conductor, to enforce it; that at the time Greer was injured, one Powell, a kinsman of Greer, was riding on the freight train of which Greer was conductor, without the requisite permit and in violation of said rule, and with Greer's consent; and that Greer knew he was, in permitting this, violating the rule of the company, which it was his duty to enforce; that in an accident which happened to said train Powell was injured; and that he had sued the complainant in the courts of Mississippi, for said injuries, in the sum of five thousand dollars; and that

the suit was pending at the time of filing this bill.

The bill further alleges that the defendant is wholly insolvent, and prays that he be enjoined from collecting five thousand dollars of said judgment, until the termination of the Powell case, and that, in the event judgment should be recovered by Powell, it shall be satisfied out of the five thousand dollars impounded.

Complainant tendered with its bill the excess of the judgment, with interest and costs, in favor of Greer, over five thousand dollars, and the Chancellor granted a fiat for the injunction, conditioned upon the execution of a bond in the penalty of ten thousand dollars and the payment into Court of said excess; all of which was done, and the injunction issued.

Defendant demurred, and assigned eleven grounds.

By consent of parties the East Tennessee, Virginia, and Georgia Railroad Company was allowed to file an amended and supplemental bill, which set up that it was the lessee of complainant's road and was operating the same, and was the real party in interest in respect of all matters involved in the litigation. It also repeated, in substance, the allegations of the original bill.

A new injunction bond was given, and it was agreed that the injunction already executed might remain in force. The Defendant Greer was paid the excess over the five thousand dollars; and upon the execution by him of a refunding bond in the

Railroad *v.* Greer.

penalty of ten thousand dollars, complainant was ordered by the Court to pay him the remaining five thousand dollars, which was done. Defendant relied upon the demurrer filed to the original bill, and assigned three additional grounds.

The cause was heard upon demurrer; and the Chancellor dismissed the bill, and decreed that the refunding bond be canceled, and from this decree complainant appealed. .

The grounds of demurrer, fourteen in number, are too numerous to be set forth in detail, and, besides, the same question is presented under separate assignments in but slightly varying aspects. Summarized and grouped, they present the following propositions, in substance :

*First.*—Whether the bill can be maintained under the head of equitable set-off, because of the want of any present subsisting demand against the defendant; the demand set up in the bill being a mere possibility, a contingent liability, that may never be fixed.

*Second.*—As the bill is predicated upon a liability to Powell for a wrong, this, by implication, is an admission that complainant has been guilty of negligence; 'and therefore it should not be permitted to maintain its bill to make defendant liable to it for losses which it has sustained by its own wrongful conduct.

*Third.*—That complainant cannot make defendant answerable to it for such losses incurred by injuries to Powell, unless it alleges that the injuries

occurred through the default of defendant as a
proximate cause, and that the same was in nowise
occasioned by any negligence of complainant, either
as a proximate or a concurrent cause.

*Fourth.*—That though it be alleged that defend-
ant violated his duty, yet this was not the cause
of the injury, but that some other independent act
of complainant was the proximate cause, and that
therefore complainant, being itself a wrong-doer,
cannot call upon defendant for contribution.

The theory of the bill is that one of the duties
of defendant's employment was to prevent persons
from riding on the train of which he was in
charge, and that, in violation of his obligations to
the company, defendant permitted Powell to be in
the position where he was injured, and thus cre-
ated relations between Powell and complainant by
which complainant might become liable to him.
The contention is that, no matter what might have
happened to the train, no liability could have arisen
to Powell but for the wrongful and conscious vio-
lation by defendant of a rule which was intended
to protect the company from exactly such respon-
sibility, and for the enforcement of which, as one
of his express duties, he was employed.

Story on Agency, Sec. 217c, says: "Whenever
an agent violates his duties or obligations to his
principal, whether it be by exceeding his author-
ity or by positive misconduct, or by mere negli-
gence or omission in the proper functions of his
agency, or in any other manner, and any loss or

damage thereby falls on his principal, he is responsible therefor, and must make a full indemnity therefor. In such case it is wholly immaterial whether the loss or damage be direct to the property of the principal, or whether it arises from the compensation or reparation which he has been obliged to make to third persons in discharge of his liability to them for the acts or omissions of his agents. The loss or damage need not be directly or immediately caused by the act which is done or omitted to be done. It will be sufficient if it be fairly attributable to it as a natural result or just consequence."

The above, in substance, is quoted and approved in *Walker* v. *Walker*, 5 Heis., 427.

The same author, after citing cases where the agent was held liable for violation of duty, although other causes intervened to produce the injury, says, Sec. 219: "In all these cases, although the misconduct or negligence of the agent is not the direct and immediate cause of the accident or loss, yet it is held to be sufficiently proximate to entitle the principal to recover for the loss or damage, for otherwise the principal would be without remedy for such loss or damage, since the same objection would apply in almost all cases of this sort."

Wharton on Agency, Sec. 253, says: "If the loss was immediately attributable to *casus*, or the intervention of third parties, this constitutes no defense, if the principal was exposed to such by

the misconduct of the agent. The supervening loss must in some way be connected with the fault either as causing the loss as a cause or as determining the incidence of some other cause of loss."

Sutherland on Damages, Vol. III., page 8, says, in regard to liability of agents for violation of instructions of principal, as follows: " The instructions may relate to measures deemed expedient by the principal to secure himself against a contingent or possible loss. If these instructions are disregarded the agent will not be heard to say that he is not liable by reason of the uncertainty of the loss if it happens, for it is a loss in contemplation of the parties; the instructions were intended to make exemption from such possible loss certain. After the disregard of such instructions the loss, when it occurs, is morally the direct consequence of the agent's breach of duty, whatever may be the immediate physical cause."

It is said that this principle cannot be applied in this case, because Powell's injury must have occurred through some negligence of complainant, for otherwise complainant could not be liable to him, and that such negligence, and not the act of Greer, was the proximate cause; and, moreover, Greer, though in default himself, and contributing to the loss of complainant, cannot be held liable to complainant, where its negligence was concurrent and contributed to the injury.

Railroad companies operate trains by subordinate

officers and servants. Though there may be no negligence on the part of its controlling officers, it is, nevertheless, answerable to injured parties for the negligence of its subordinate officers and servants under the doctrine of *respondeat superior*, just the same as if it were an individual, and had, as such, been personally guilty of the negligence complained of.

Freight trains are not adapted to the carrying of persons, either with speed, safety, or convenience. The hazard is far greater upon them than upon passenger trains, which are specially designed and operated for transporting persons. This division, in the manner of performing railway service, is based upon practical experience which has demonstrated that it is in the interest both of the carrier and the general public. It is general in all countries where railways have reached an advanced stage of development. Complainant has limited the use of its freight trains, except in cases where special permit is given, to the transportation for which they are designed, and in view of the greater risk to life and limb upon such trains, and the consequent liability, it imposed upon defendant the duty of excluding persons from the train of which he was conductor, and of preventing the consummation of the contractual relation of common carrier with its attendant liability. The risks intended to be guarded against may have been, and most probably were, those which might result from the negligence of its own servants.

44

If, being aware of these hazards, arising from the necessary employment of a great number of servants, and wishing to guard against them it contracted with defendant, and paid him to perform a duty which would have effectually protected complainant from any liability to Greer, and if defendant may, as is contended, willfully violate his contract and annul with impunity the obligations of his employment, and create for complainant the very contractual relation he agreed to prevent, then a case would be presented of a wrong without a remedy, a breach of contract without liability, and an abortive though careful effort to guard against danger, with no power to avoid the consummation of a contract entailing liability and loss, and no redress for the dereliction of the agent who, in violation of his duty, created the relation from which the contract followed as a direct legal consequence.

The conductor, in violation of his duty, placed Powell in the position where he was injured, and if such injury was the result of an accident caused by the negligence of complainant's other servants, he thus, by defendant's act, acquired the right to recover damages from complainant. The negligence of the company's other servants in causing the accident would not have injured Powell but for the misconduct of defendant. But for the act of defendant the train might have been annihilated through the negligence of complainant's other servants, and yet no injury could have been sustained

by Powell.    While Powell has no right of action against defendant, and as between Powell and complainant the negligence of complainant was the proximate cause of the injury, yet as between complainant and defendant the wrongful act of defendant was the· proximate and efficient cause of loss to complainant, should it have to pay Powell. As this was in violation of his duty to his principal, defendant should answer for the loss sustained. Such injuries and losses were within the contemplation of his contract, and the rule which was known to him put him fully on his guard.    He assumed the risk himself when he violated it.    He cannot admit that he has breached his contract in failing to protect complainant from losses occasioned by the negligence of its other servants, which he might have done by the performance of a simple duty, but deny that he can be held liable, on the ground that the negligence of such servants as between complainant and Powell is in law imputable to complainant.

The obligation imposed by a rule of law upon complainant as to third parties has nothing to do with the contractual responsibility of defendant. The effect of such a rule as is contended for would be to deprive a principal absolutely of the benefit of a contract. having for its purpose the employment of an agent to protect him, by guarding him in a way fully within his power, against the establishment of conditions, which bring strangers within the radius of injuries · that may

accrue through the negligence of his other serv-
ants.

It is further argued that, as both complainant
and defendant were neglectful, complainant cannot
sustain this action, because there can be no con-
tribution between wrongdoers. They do not occupy
this relation to each other, for, if they did, then
Powell would have had a right of action against
Greer, which he did not, as Greer had done him
no wrong. He, by virtue of his agency, put him
under the protection of his principal, with its legal
consequences, and that is what is now complained
of. It is not contribution but indemnity that is
asked for, from an agent, for a loss occasioned by
his misconduct. The action is for a breach of
contract, and not against a co-tort-feasor.

The Chancellor dismissed the bill on the ground
that it could not be sustained under any head of
equity jurisdiction except that of equitable set-off,
and that the essential element of a present, sub-
sisting claim is wanting, and hence complainant
has no remedy, however meritorious his right may
eventually turn out to be. It is true that com-
plainant has no present, fixed demand, and it may
defeat Powell, and hence never have one; but if
the allegations in the bill be true as to the con-
tract with defendant, and his violation of duty,
then it is manifest that complainant, in litigating
the claim of Powell in Mississippi, is making a
contest in the interest of defendant. The action
of complainant, which redounds to the benefit of

defendant, is urged as a ground for destroying the
only means of indemnity left to complainant. The
allegation in the bill, that the right of Powell is
denied, and that it is being and will be contested,
is in the interest of this defendant; for, if com-
plainant had admitted unconditionaly in this bill
its liability to Powell, then such admission might
have been used in the suit pending in Mississippi.

It appears, therefore, in this case, that while
complainant might have paid the claim of Powell,
and thus have acquired such a subsisting right
against defendant as would have justified impound-
ing the fund until it could have been adjudicated,
it has pursued a course which is far more to the
interest of defendant, and is making a fight in
his behalf.

The peculiar relations between the parties, grow-
ing out of the facts surrounding the demand, might
justify the application of the doctrine of equitable
set-off, for, as stated in *Parker* v. *Britt*, 4 Heis.,
249, "courts of equity will extend the doctrine of
set-off in all cases where peculiar equities inter-
vene between the parties."

The bill will lie as a *quia timet* bill, to prevent
irreparable injury, on account of the insolvency of
defendant. Such a bill was sustained when it was
brought by a vendee to enjoin the sole devisee of
his vendor, from disposing of the devised property,
upon the allegation that he had been sued for the
land purchased, and might lose it by a paramount
title, and that if the property should be aliened

he would have no remedy on his warranty, and thus would suffer irreparable injury. *Baird* v. *Goodrich*, 5 Heis., 20. In that case the land had not been lost, and might never be, but the bill was sustained as a *quia timet* bill, notwithstanding the right to sue at law upon the covenant of seizin was unembarrassed. It has been held that a surety, when his principal is insolvent, may proceed against him before paying the debt. *Miller* v. *Speed*, 9 Heis., 200 and 201, and cases there cited. *Henry* v. *Compton*, 2 Head, 549. And so the doctrine is stated in Pomeroy's Equity Jurisprudence, Section 1417.

Complainant is not a surety of defendant, and there is no privity between defendant and Powell, and yet it is answering for the default of defendant—a default in respect of which defendant is primarily liable to it the same as he would be under a contract of suretyship. As between them their obligation stands on as high ground, and rights under it should be protected to the same extent. It would be contrary to natural justice to permit Greer, who is insolvent, to collect his entire judgment from defendant, and make way with the money, and, by the interposition of such defenses, defeat the right, and leavĕ complainant to pay Powell for an injury occasioned by Greer's wrongful act, and in violation of his contract, ·which was to protect complainant against the possibility of answering for such accidents to passengers. Defendant has collected all of the money, and has given a refund-

Railroad *v.* Greer.

ing bond for $10,000, and it is right that it should remain in force.

The decree of the Chancellor is reversed, the demurrer is overruled, the refunding bond remains in full force and effect, and the cause is remanded for further proceedings.