CITIZENS' BANK *v.* KENDRICK, PETTUS & CO.

AND

DORITY *v.* FRANKLIN BANK.

(*Nashville.*    March 23, 1893.)

1. MARSHALING ASSETS.    *Under general assignments.*

When maker and indorser of note become insolvent, and each makes a general assignment for benefit of his creditors, the holder of the note is entitled to *pro rata* under each assignment upon the full amount of the note, if the aggregate sum thus realized does not exceed his debt.

Cases cited and approved: 78 Ky., 291; 79 N. C., 244; 67 Mich., 296; 82 Penn. St., 113 (S. C., 22 Am. R., 754); 78 Wis., 615 (S. C., 23 Am. St. R., 435); 6 Cush., 537; 85 N. C., 352 (S. C., 39 Am. R., 702).

2. EQUITABLE SET-OFF.    *Indorser for insolvent principal may retain, when.*

An indorser whose principal has become insolvent, may, without having paid the note, retain for his indemnity any funds belonging to his principal that may be in his hands.

Cases cited and approved: Nashville Trust Co. *v.* Bank, 91 Tenn., 336; 1 Paige Ch., 585 (S. C., 19 Am. Dec., 452).

FROM MONTGOMERY.

Appeal from Chancery Court of Montgomery County.   GEO. E. SEAY, Ch.

HOUSE & MERRITT for Citizens' Bank.

R. H. BURNEY for Kendrick, Pettus & Co.

LEECH & SAVAGE for Franklin Bank.

W. M. DANIEL, T. J. BAILEY, A. E. GARNER, and JNO. L. STARK for creditors of Kendrick, Pettus & Co.

CALDWELL, J. On December 10, 1890, Kendrick, Pettus & Co. made a general assignment for the benefit of creditors. The indebtedness aggregated about $250,000, and the assets were worth about one-fourth that amount.

On the same day, a few hours later, Franklin Bank also made a general assignment for the benefit of creditors. Its liabilities were over $900,000, and assets about one-fourth as much.

These bills were filed for the settlement of the two trusts.

Without going much into detail, the legal questions presented on appeal will be considered in order.

*First.*—Franklin Bank was bound as indorser on the paper of Kendrick, Pettus & Co. to the amount of about $75,000; and that paper was secured in both assignments alike, and in common with other debts of the assignors respectively.

Each holder of the separate pieces of paper making up that $75,000 claimed the right to prove his debt *in full* against both debtors, and to receive from each fund a full *pro rata* of his whole debt.

Franklin Bank and its assignees denied that right in the full sense claimed, and contended that the holders of such indorsed paper should *first* credit their debts by *pro rata* of the fund provided by the principal debtor, and then receive *pro rata* on *balance only* from the fund of the indorser.

The Chancellor was right in sustaining the former contention.

Kendrick, Pettus & Co, the maker of the indorsed paper, secured that paper as it did its other liabilities, giving preference to none. Franklin Bank, the indorser, did the same. That paper, as it then existed, and to its full amount, was provided for in both conveyances; in each as if the other had not been made. Two securities were provided for the holders of that paper, while only one was provided for the other creditors of the respective assignors. Each assignment made equal provision for each beneficiary therein named, without reference to any other security that he might have.

Two trust funds were created, and those entitled to participate in the one or the other were named and placed upon an equal footing. It was not provided, nor contemplated, that any beneficiary of the one fund should receive a greater or less *per centum* of his whole debt from that fund than any other beneficiary thereof should receive. Those who were creditors of both assignors become entitled to share in both funds; having two debtors, they received two securities, one of which they

are to share equally with the other creditors of the debtor providing it, and the other of which they are to share equally with the other creditors of the debtor providing it.

In such cases, each trust should be administered separately, and such fund distributed as if the other had not been created, at least up to the point of making full payment of debts entitled to participate in both. Less than that would be unjust to those having two debtors and two securities.

In the present case the most that such creditors can hope for is one-half of their debts—one-fourth under each assignment—while others will receive just half as much on the dollar.

It seems to be well settled that if both maker and indorser of negotiable paper become insolvent, and voluntarily assign their property for the benefit of creditors, as in this case, the holder may prove the full amount of his debt against both estates at the same time, and receive from each a full *pro rata* on that amount, provided only that the two sums so received shall in no case exceed the true amount of the debt. Such is the rule in Kentucky, North Carolina, Michigan, Pennsylvania, Wisconsin, and Massachusetts. *Citizens' Bank* v. *Patterson*, 78 Ky., 291; *Brown* v. *Merchants' Bank*, 79 N. C., 244; *National Bank* v. *Byles*, 67 Mich., 296; *Miller's Estate*, 82 Penn. St., 113 (S. C., 22 Am. R., 754); *In re Meyer*, 78 Wis., 615 (S. C., 23 Am. St. R., 435); *Sohier* v. *Loring*, 6 Cushing, 537.

We have been able to find no case holding the contrary upon the precise facts stated. The case of *Bank* v. *Alexander*, 85 N. C., 352 (S. C., 39 Am. R., 702) is not in conflict. It recognizes the authority of *Brown* v. *Merchants' Bank, supra*, and makes a distinction between the two cases upon their different facts.

The English rule is stated by Mr. Byles as follows: "When accommodation bills are in the hands of a third party, for a valuable consideration, he may prove the whole of each bill upon each of the parties to it, and receive dividends as far as the amount due to him." Byles on Bills, 370.

*Second.*—At the time the assignments were made Kendrick, Pettus & Co. had $32,000 on deposit in the Franklin bank. In its answer and cross-bill, the bank insisted that it was entitled to retain that deposit as indemnity against what it might have to pay as indorser for Kendrick, Pettus & Co. on the $75,000 of commercial paper.

That right was denied by the assignee of Kendrick, Pettus & Co., upon the ground, mainly, that the liability of the bank as indorser had not been ripened into a debt by payment of the paper indorsed.

We think the bank clearly entitled to the indemnity, though it has not, in fact, paid any part of the indorsed paper, so as to become a creditor of the maker in the full sense. Payment is not a prerequisite to the relief sought. Liability to

pay and insolvency of the principal debtor, are sufficient. That, without more, justifies an equitable set-off.

The bank must pay as far as its assets will go —that is inevitable. In fact, it has conveyed its property for that purpose, and can be protected against certain and irretrievable loss in no other way than that proposed in this case, its principal being hopelessly insolvent, and having assigned all of its property for the benefit of general creditors.

An indorser for an insolvent maker, being indebted to that maker by reason of a deposit, or otherwise, may bring the holder of the paper indorsed and the maker before a court of equity, and have the indorser's debt to the maker applied on the debt of the holder.

That is practically what the bank has done in this case.

The fact that the firm of Kendrick, Pettus & Co. assigned its property for the benefit of all its creditors, and that the holders of the paper indorsed by the bank constitute but a small part of those creditors, does not defeat or impair the bank's right to indemnity from the fund in question. In equity, that fund was, at most, an asset of Kendrick, Pettus & Co. *only* to the extent of any balance thereof that might remain after adjustment of the equities existing between Kendrick, Pettus & Co. and the bank. Being insolvent, the depositor had no power to transfer its claim for the deposit, so as to defeat the bank's right of

retention for indemnity.    Hence, all that passed by the assignment of the depositor, as against the bank, was what may be left of the $32,000 after the bank shall have been fully re-imbursed for all payments made by it on the depositor's paper.

It would be unjust and inequitable in a high degree to compel an indorser, so situated, to surrender assets of an insolvent principal before settlement of all liability growing out of the indorsement.

It is worthy of repetition, that the right of equitable set-off existing in favor of the bank by reason of the insolvency of Kendrick, Pettus & Co., was not affected by the latter's assignment of all its assets.

This proposition has unquestioned support in sound reason and justice, and is sustained by authorities directly in point.    See *In Re Receiver*, 1 Paige Ch., 585 (S. C., 19 Am. Dec., 452); 1 Morse on B. & B. (3d Ed.), Sec. 337.

Our own case of *Nashville Trust Co.* v. *Bank*, 91 Tenn., 336, maintains the same doctrine, though involving different facts.

The decree on this point will be modified accordingly.