NOLAN BROS. LUMBER Co. *v.* DUDLEY LUMBER Co.

*(Jackson.* April Term, 1913.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS. Set-off.

The debtor of an insolvent creditor, who has assigned, for the benefit of creditors, the obligation evidencing the indebtedness, may set off against the demand in the hands of the assignee any indebtedness, whether matured or unmatured due from the insolvent. *(Post, p.* 15.)

Cases cited and approved: Trust Co. v. Bank, 91 Tenn., 336; Spaulding v. Backus, 122 Mass., 553; Gatewood v. Denton, 40 Tenn., 381; Litterer v. Berry, 72 Tenn., 193; Catron v. Cross, 50 Tenn., 584.

2. PRINCIPAL AND SURETY. Remedies of surety.

A surety or an indorser of a promissory note, who pays the debt due from his principal, may, if the principal be insolvent, enforce an equitable set-off against any demand sued on by such principal. *(Post, p.* 16.)

Case cited and approved: Bank v. Kendrick, 92 Tenn., 437.

3. SET-OFF AND COUNTERCLAIM. Right to set-off.

Under Shannon's Code, sec. 4639, providing that a defendant may plead demands matured when offered in set-off, and any equities between defendant and the original party under whom plaintiff claims, which by law have attached to the demand in plaintiff's hands, and for which defendant would be entitled to recover against the original party, the right of an indorser to compensation for the payment of a note of plaintiff's assignor is an equity which may be offered in a set-off in an action by the assignee; the assignor being insolvent. *(Post, pp.* 16, 17.)

Cases cited and approved: Taylor v. Deakins, 77 Tenn., 523; Moore v. Weir, 35 Tenn., 46; Bank v. Kendrick, 92 Tenn., 437.

Code cited and construed: Sec. 4639 (S.).

4. **SET-OFF AND COUNTERCLAIM.  Rights of assignee.**

Where defendant was an indorser of a note given by plaintiff's assignor, the assignment of a debt due from defendant to the assignor will not preclude defendant from claiming an equitable set-off; it appearing that the assignor was insolvent at the time of the execution of the note and the making of the assignment, the bare fact that defendant did not pay the note until after the assignment not affecting its rights. (*Post, pp.* 18, 19.)

Cases cited and approved:  Merwin v. Austin, 58 Conn., 22; Craighead v. Swartz, 219 Pa., 149; Beaver v. Beaver, 23 Pa., 167; Scott v. Timberlake, 83 N. C., 151; Williams v. Helme, v. Dillard, 32 Va., 31; Collins v. Robin, 10 Barns, S. C., 777; 16 N. C., 151; McKnight v. Bradley, 10 Rich. Eq., 557; Feazle Smith v. Felton, 43 N. Y., 419; Coffin v. McLean, 80 N. Y., 560; Scott v. Armstrong, 146 U. S., 499; Armstrong v. Warner, 49 Ohio St., 376; Eigenmann v. Clark, 21 Ind. App., 129; Sewing Machine Co. v. Zachary, 2 Tenn., 478.

Cases cited and disapproved:  Huse v. Ames, 104 Mo., 91; Walker v. McKay, 2 Metc., 294; Nettles v. Huggins, 8 Rich., 273; Chance v. Isaacs, 2 Edw. Ch., 348; Richardson v. Anderson, 109 Md., 641.

5. **SET-OFF AND COUNTERCLAIM.  Assigned rights.  Rights of indorser.**

Where an indorser of a promissory note paid the same upon the default of the insolvent maker, the mere fact that the note was reassigned to the indorser will not preclude it from claiming to be treated as a surety, and so entitled to set off the note against a claim assigned by the maker to plaintiff. (*Post, p.* 20.)

6. **SET-OFF AND COUNTERCLAIM.  Bills and notes.  Indorser. Statutes.**

Negotiable Instruments Act (Laws 1899, ch. 94), sec. 50, providing that, where an instrument is negotiated back to a prior party, such party may, subject to the provisions of the act, reissue and further negotiate the same, but he is not entitled to enforce payment against any intervening party, when read

in connection with section 121, providing that, where an instrument is paid by a party secondarily liable, it is not discharged, but the party so paying is remitted to his former rights, will not preclude an indorser of a promissory note, who paid the same upon the insolvency of the maker, from claiming a set-off against one to whom the maker had assigned a debt due from the indorser. (*Post*, p. 21.)

### FROM SHELBY.

H. R. BOYD, for complainant.

JACKSON & McREE, for defendant.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—

Mr. Justice WILLIAMS delivered the opinion of the Court.

This cause is before this court on petition for writ of *certiorari* to the court of civil appeals to review a decree of that court reversing a decree in favor of the Dudley Lumber Company rendered by the chancery court of Shelby county. The case in the chancery court was heard upon an agreed statement of facts.

On March 24, 1910, Nolan Bros. Lumber Company executed its promissory note, payable to the Dudley Lumber Company, to mature May 24th. On April 29, 1910, the Dudley Lumber Company discounted this note with the Michigan Private Exchange Bank, of Grand Rapids, Mich., indorsing the same. On May 10, 1910, the Nolan Company sold to the Dudley Company

a bill of lumber to the amount of $577.24. On May 12, 1910, the Nolan Company, being insolvent at that time (as well as at the date of the execution of the note), assigned this account for lumber to the National City Bank, of Memphis, and that bank on the same day gave due notice of the assignment. This account matured sixty days from the date of its creation. At the maturity of the note, May 24, 1910, the Nolan Company defaulted in payment, and the Dudley Company, under its obligation so to do as indorser, paid and took over the note. On July 10th, the date of the maturity of the account, the Dudley Lumber Company tendered the National City Bank the amount representing the difference between the account and the note, under a claim of a right to set-off as indorser thus forced to liquidate the note demand of the insolvent Nolan Company. The tender was declined by the bank, which brought suit in the name of the assignor on the assigned account.

The Dudley Company here assigns as error in the decree of the court of civil appeals the holding that it was not entitled to set off the note of the Nolan Company, so held by it, against the account.

It is contended that the insolvency of the Nolan Company, at the date of the assignment, makes a case for the application of the doctrine of equitable set-off, and that the Dudley Company, under the obligation of indorser at assignment date, was, prior to the account's maturity, compelled to pay the note, and is entitled to invoke that defense.

The debtor of an insolvent creditor, who has assigned for the benefit of creditors the obligation evidencing the indebtedness, may set off against the demand in the hands of the assignee any indebtedness, whether matured or unmatured, at the date of assignment. *Trust Co.* v. *Bank,* 91 Tenn., 336, 18 S. W., 822, 15 L. R. A., 710.

This right is based on the equity growing out of the insolvency of the assignor, at the time of the assignment; but the opinion in *Trust Company* v. *Bank* indicates a distinction between the assignment where it is to a third party on purchase, as here, and where the assignment is one for the benefit of creditors. The court, in discussing the case of *Spaulding* v. *Backus,* 122 Mass., 553, 23 Am. Rep., 391, said that its "holding is not necessarily inconsistent with the right of set-off as between the original parties, and appears entirely consistent with the decisions of this court that a right of set-off, to be so attached to the debt as to be available against it in the hands of an assignee for value, must be complete and perfect at the date of the assignment. *Gatewood* v. *Denton,* 3 Head, 381; *Litterer* v. *Berry,* 4 Lea, 193; *Catron* v. *Cross,* 3 Heisk., 584." And later in the opinion the court proceeded to treat the case before it as if only the insolvent himself were resisting the set-off, as distinguished from one who took, for value, the assignment.

We deem, therefore, the question for solution in the case at bar to be one not passed upon by the court in

that cited case, nor in any subsequent case decided by this court.

There can be no doubt that a surety or indorser, who pays his principal's demand, has *status,* as such, to enforce an equitable set-off against a demand sued by such principal himself, if that principal be insolvent. There is nothing in any contingent feature incident to the claim of a surety or indorser that defeats the right. *Bank* v. *Kendrick,* 92 Tenn., 437, 21 S. W., 1070, 36 Am. St. Rep., 96, and authorities below cited.

What change is wrought by an assignment, for value, of the demand, followed by notice by the assignee? It was said in *Taylor* v. *Deakins,* 9 Lea, 523: "It is true, the general rule is that the assignee of negotiable paper for a pre-existing debt is not a holder in due course of trade without notice, and hence with respect to *existing equities* he stands in the shoes of the assignor; but the assignee does not continue to stand simply in the shoes of the assignor, especially after notice, so that his right to enforce the payment of the debt may be defeated by subsequent acts of the assignor or debtor."

In *Moore* v. *Weir,* 3 Sneed, 46, it was held that such an assignee's condition, as respects the maker of the demand assigned, is no better than that of the assignor, and a mutual debt existing at the date of the assignment, but maturing afterwards, is allowable as a set-off. And this in an action at law.

By the Code (Shannon, sec. 4639) it is provided that the defendant may plead demands matured when offered in set-off, and any equities between defendant

and the original party (assignor) under whom plaintiff claims, which by law have attached to the demand in plaintiff's hands, and for which the defendant would be entitled to recover against such original party.

The indorser company in the case at bar was such before and at the time the account against it was assigned, and before suit was brought, and, when "offered in set-off," it had taken over the note. The assignor was insolvent at the time the note was executed and indorsed, as well as at the date of the assignment.

In this attitude the indorser had equities between itself and the insolvent assignor attached to the demand, afterwards assigned, so far forth that it could have enforced the retention for its indemnity of any funds belonging to the assignor, principal on the indorsed note, that might be in the indorser's hands; and this without having paid the note. *Bank* v. *Kendrick,* supra; 27 Am. & Eng. Ency. Law (2 Ed.), 478.

We hold that the assignment did not operate to defeat the right of the indorser to stand and prevail upon its defense of equitable set-off. We have not here an effort to set off a demand purchased or acquired after the assignment, but the enforcement of a right that antedated the assignment.

The decisions as to when a surety or indorser has a claim which can be used as a set-off are conflicting. In Connecticut it has been held that a surety may set off the amount which he is compelled to pay for his principal after an assignment against debts which he owed

the insolvent, and which had passed into the hands of an assignee, the court saying that in equity, in view of the insolvency of the principal, the surety could proceed to compel prompt payment, and that, when the surety did later move to that end, the motion related back to the first moment of the existence of the right, which was prior to the acquisition of any right by the assignee. *Merwin* v. *Austin,* 58 Conn., 22, 18 Atl., 1029, 7 L. R. A. 84.

A number of cases may be found to the effect that a surety or indorser, who has not, at the time of the assignment, paid the note, has no right to set off its amount against a debt due by him to the assignor. *Huse* v. *Ames,* 104 Mo., 91, 15 S. W., 965; *Walker* v. *McKay,* 2 Metc. (Ky.), 294; *Nettles* v. *Huggins,* 8 Rich. (S. C.), 273; *Chance* v. *Isaacs,* 2 Edw. Ch. (N. Y.), 348; also see *Richardson* v. *Anderson,* 109 Md., 641, 72 Atl., 485, 25 L. R. A. (N. S.), 394, 130 Am. St. Rep., 543.

But the contrary is held elsewhere. *Craighead* v. *Swartz,* 219 Pa., 149, 67 Atl., 1003; *Beaver* v. *Beaver,* 23 Pa., 167; *Scott* v. *Timberlake,* 83 N. C., 382; *Williams* v. *Helme,* 16 N. C., 151, 18 Am. Dec., 580; *McKnight* v. *Bradley,* 10 Rich. Eq. (S. C.), 557; *Feazle* v. *Dillard,* 32 Va., 31; *Collins* v. *Robine,* 10 Barns. & C., 777. Also see *Smith* v. *Felton,* 43 N. Y., 419; *Coffin* v. *McLean,* 80 N. Y., 560; *Scott* v. *Armstrong,* 146 U. S., 499, 13 Sup. Ct., 148, 36 L. Ed., 1059; *Armstrong* v. *Warner,* 49 Ohio St., 376, 31 N. E., 877, 17 L. R. A., 466; *Eigenmann* v. *Clark,* 21 Ind. App., 129, 51 N. E., 725; 34 Cyc., 751.

We are of opinion that the latter rather than the former line of authorities is more in accord with the principle that underlies our statute and decisions. The element of the time of payment does not figure, if made before the set-off was pleaded; and, as we have seen, in contemplation of equity, rights will be taken to have inhered in the indorser anterior to the assignment. The assignee will not be treated as a *quasi* holder in due course for value as against such an indorser. Manifestly a court of equity should not hold itself powerless to relieve from loss, in a very real sense fixed on the indorser at the time of the assignment, merely because his demand was not matured in law on assignment date. The trend of the more recent cases appears to be towards the ruling here made, and away from the influence of the rules of the common law as to set-off, sometimes harsh in their exactness.

Chancellor Cooper in *Sewing Machine Co.* v. *Zachary*, 2 Tenn. Ch., 478, dealing with a demand assigned for value, cited with approval *Smith* v. *Felton*, supra; and in the latter case the court said: "Equity will look through the form of the transaction, and adjust the equities of the parties with a view to its substance, rather than its form, so long as no superior equities of third persons will be affected by such adjustment. . . . It is enough that justice and equity demand that the debts should be set off against each other, rather than that the defendants should pay the note, and be left to rely upon the estate of an insolvent debtor for the payment of the debt due them. Techni-

cal objections, which would be valid at law, will not avail to defeat equitable set-off. The plaintiffs took title to the note, subject to the equitable claim of the defendants, as it existed at the time of the assignment, which was to set off their debt against the note to the amount of the latter, and the legal title will not avail to defeat this prior equity of the defendants.''

The indorser company, in such situation as is here disclosed, is in the eye of equity potentially a creditor, and the assignee succeeded only to the rights of the assignor, subject to the prior equity.

The court of civil appeals held that the Dudley Company was not entitled to be treated as a surety, and that, because it came into possession of the note from the Michigan Bank, subsequent to the assignment of the account, ''by reassignment, this amounted to a repurchase or new acquisition by it.'' This is an erroneous view, even if there had been a formal reindorsement by the Michigan Bank to the Dudley Company, since such reassignment would have been nothing further than an evidencing in form that was true in substance—that the Dudley Company by payment was in command of the obligation that had been indorsed by it. But the only indorsement in fact made by the Michigan Bank was one to a Memphis bank for collection, and payment was made thereunder at the Memphis bank.

As a further ground of its decision adverse to the Dudley Company, the court of civil appeals states its opinion to be ''that section 50 of the Negotiable Instru-

ments Act [Laws 1899, ch. 94.] clearly indicates that the indorsee [Dudley Company, treated as such, as above] cannot urge as against an assignee the equities or rights attaching to a note between the date of its execution and its reacquisition by him.''

The section referred to is as follows: ''Where an instrument is negotiated back to a prior party, such party may, subject to the provisions of this act, reissue and further negotiate the same. But he is not entitled to enforce payment thereof against any intervening party to whom he was personally liable.'' This section should be read in connection with section 121, which provides: ''Where the instrument is paid by a party secondarily liable thereon, it is not discharged; but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own, and all subsequent indorsements, and again negotiate the instrument,'' etc.

It is clear that there is nothing in the act that bars the indorser company, which paid the note, of its remedy against the maker; and the assignee of the account was not an ''intervening party'' within the meaning of section 50 of the act. In short, the provisions of the act have no pertinency to the facts of this case.

The writ of *certiorari* is granted, and the decree of the court of civil appeals reversed. Decree here in accord with the one pronounced by the chancellor.