JOHN COCKRILL *v.* PEOPLES SAVINGS BANK *et al.*

(*Nashville.* December Term, 1926.)

Opinion filed April 15, 1927.

1. **SUPREME COURT. Jurisdiction. Certiorari and supersedeas. Acts 1925, ch. 100.**

Under Acts 1925, chapter 100, the court has jurisdiction of all cases "which have been finally determined in the lower courts on demurrer or other method not involving a review or determination of the facts, or in which all the facts have been stipulated;" and may award writs of **certiorari** and **supersedeas**, where there is no material controversy over the facts as presented by the pleadings, on bill and answer. (Post, p. 347.)

2. **SAME. Supervisory jurisdiction over inferior tribunals. Certiorari.**

The court has broad powers, inherent and statutory with respect to the issuance of the writ of **certiorari,** to enforce the supervisory jurisdiction of the proceedings and judgments of inferior tribunals. (Post, p. 347.)

Citing: Campbell v. T. C. R. R. Co., 109 Tenn., 640-648; Thompson-Shannon's Code, sec. 6329; Code 1858, sec. 4496.

3. **SAME. Same. Same.**

The appellate courts of the State have the same jurisdiction to award the writ of **certiorari** in cases where appeal or writ of error does not lie, to correct the errors of inferior courts of law or equity, that the circuit court has in such cases to award such writ to correct the errors of inferior tribunals. (Post, p. 348.)

Citing: Thompson-Shannon's Code, sec. 6329; Code 1858, sec. 6496; Clement v. Roberts et al., 144 Tenn., 129; State v. Herbert, 127 Tenn., 241; Connor v. Knoxville, 136 Tenn., 437; Staples v. Brown, 113 Tenn., 241; State v. Bockman, 139 Tenn., 422.

4. **SAME. Same. Office of supersedeas.**

The issuance of the writ of **supersedeas,** imports that something is about to be done, "in fieri," but not yet finished, which will be illegal and injurious to the party complaining, and the doing of that

act is to be suspended until its justice and legality can be inquired into by the court. Necessity for its issuance does not exist when there is no court order in fieri to stay. (Post, pp. 348.)

Citing: Howell v. Thompson, 130 Tenn., 311.

5. **SAME. Power to make effectual its jurisdiction.**

The court has authority to issue all writs and process necessary for the exercise and enforcement of its jurisdiction; to protect its jurisdiction, to prevent such jurisdiction from being trifled with or rendered ineffectual, and may consider matters transpiring after a cause is heard in lower courts. (Post, p. 348-9.)

Citing: Ward v. Alsup, 100 Tenn., 619; State v. Crump, 134 Tenn., 131.

6. **EQUITY. Suit for exoneration of sureties.**

The doctrine of the exoneration of sureties is well established in this and other jurisdictions. (Post, p. 353-4.)

Citing: Mattingly v. Sutton et al., 19 W. Va., 19; Abbey v. Van Campen, 1 Freeman Chy. (Miss.), 275; Richardson v. Merritt, 74 Minn., 354; Feazle v. Dillard, 5 Leigh (Va.), 30; Walker v. Dicks, 80 N. C., 263; Sims v. Wallace, 6 B. Mon. (Ky.), 410; Beaver v. Beaver, 23 Pa., 167.

7. **SAME. Same. Equitable set-off. Injunction.**

Courts of equity will extend the doctrine of set-off and claims in the nature of set-off, beyond the law, in all cases where the peculiar equities intervene, between the parties. And to preserve the right of set-off, as against his insolvent principal, to a surety seeking exoneration, an injunction may be awarded, to prevent a deprivation of property in derogation of plain equitable rights. (Post, p. 356.)

Citing: Parker v. Britt, 51 Tenn. (4 Heisk.), 243; Brazelton v. Brooks, 39 Tenn. (2 Head.), 194; Edminson v. Baxter, 5 Tenn. (4 Hay.), 112.

Citing and distinguishing: Irvine v. Dean, 93 Tenn., 346; Nashville Trust Co. v. The Bank, 91 Tenn., 336.

8. **SAME. Same. Principal dead. Bill quia timet.**

Where the principal debtor is insolvent, his surety may proceed against him, before paying the debt, for indemnity, or to subject particular assets to the payment of the debt; and where the

principal is dead, the surety may file a bill **quia timet** to compel the executor to exonerate him.   (Post, p. 356.)

Citing: Miller v. Speed, 56 Tenn. (9 Heisk.), 196, citing Adams Equity, 270, note 1; Henry v. Compton, 39 Tenn. (2 Head), 549; Greene v. Starnes, 48 Tenn. (1 Heisk.), 562; Howell & Maget v. Cobb, 42 Tenn. (2 Cold.), 104; Railroad v. Greer, 87 Tenn., 696.

9. **SAME.   Same.   Suit by trustee or assignee, against surety.**

A surety is entitled to enforce an equitable set-off against a demand of his principal against him, sued on by the principal's trustee or assignee for the benefit of creditors; and the maturities of the respective claims are not material.   (Post, p. 352.)

Citing: Nashville Trust Co. v. Bank, 91 Tenn., 336; Bank Cases, 98 Tenn., 437; Lumber Co. v. Lumber Co., 128 Tenn., 11.

10. **EQUITY, PLEADING AND PRACTICE.   Injunction denied.   Dismissal of bill, when.**

When an injunction is the substantive relief sought, and this is denied, a bill should be dismissed.   (Post, p. 346.)

Citing: Box Co. v. Lauderdale County, 144 Tenn., 266.

11. **SAME.   Same.   Appeal.   Discretion of chancellor, in granting.**

Upon the application for an injunction being denied, and not regarding the decree as final, but retaining the cause in court, an appeal is not proper at the chancellor's discretion, from an interlocutory decree under the code.   (Post, p. 347.)

Citing: Thompson's-Shannon's Code, sec. 4889; Code 1858, sec. 3157; Thompson's-Shannon's Code, sec. 4911; Code 1858, sec. 3176.

Citing and distinguishing: Mangle Box Co. v. Lauderdale county, supra.

---

*Headnotes 1. Courts, 15 C. J., section 552; 2. Certiorari, 11 C. J., section 25; Injunctions, 32 C. J., section 600; 3. Courts, 15 C. J., section 552; 4. Injunctions, 32 C. J., section 560; 5. Courts, 15 C. J., section 552; 6. Assignments for Benefit of Creditors, 5 C. J., section 272; 7. Principal and Surety, 32 Cyc., pp. 248, 249; 8. Courts, 15 C. J., section 552; 9. Supersedeas, 37 Cyc., p. 602 (Anno); 10. Banks and Banking, 7 C. J., section 952 (Anno).

## FROM MADISON.

Appeal from the Chancery Court of Madison County.—
HON. TOM C. RYE, Chancellor.

J. T. ROTHROCK, for appellant.

S. J. EVERETT and T. J. MURRAY for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the
Court.

The bill herein was filed by a surety to restrain pro-
ceedings on behalf of his insolvent principal to enforce
an indebtedness due from the surety to the principal, un-
til the extent of the liability of the surety upon obliga-
tions of the principal to third parties could be ascer-
tained, to the end that the surety might, after discharg-
ing such.liability of the principal to said third parties,
have an equitable set-off as to the principal's demand
against him. The only relief sought by the bill was an
injunction to preserve the *status quo*. The answer de-
nied complainant's right to the relief sought, and, while
taking issue upon some collateral matters, the answer did
not make a *bona-fide* denial of any material fact charged
in the bill, as will hereafter appear. Upon a hearing be-
fore the Chancellor, he rendered a decree in which he
adjudged "that complainant is not entitled to an injunc-
tion in this cause . . . but retains the cause in
court."

A petition for writs of *certiorari* and *supersedeas* to
review the action of the Chancellor was presented to a
member of the Court of Appeals. He denied the writs.

Thereupon the complainant presented a like petition for said writs to this court, and, after hearing from counsel for both sides, the court issued a temporary restraining order to preserve the *status* below pending final action on the said petition.

The first question to be determined is as to the jurisdiction of this court, rather than the Court of Appeals, to entertain this petition for *certiorari* and *supersedeas*. Under chapter 100 of the Acts of 1925, this court has jurisdiction of all cases "which have been finally determined in the lower courts on demurrer or other method not involving a review or determination of the facts, or in which all the facts have been stipulated." As above stated, none of the controlling facts alleged in the bill are definitely controverted by the answer and the case involves no controversy over the facts. If the Chancellor had passed a decree, final in form the appeal would have been to this court. This court then having appellate jurisdiction of the cause, has jurisdiction to award writs of *certiorari* and *supersedeas,* if such writs lie in the circumstances appearing. The application for such writs to the member of the Court of Appeals may be disregarded as ill advised and without effect.

Since an injunction was the only relief sought and that relief was denied by the Chancellor, the decree was in substance final, and the Chancellor should have dismissed the bill. *Mengle Box Co.* v. *Lauderdale County,* 144 Tenn., 266. Not regarding the decree as final and by express order retaining the cause in court, the Chancellor as a matter of course could not grant an appeal. The case is not one for an appeal at the Chancellor's discretion from an interlocutory decree under Thompson's-Shannon's Code, section 4889; *Mengle Box Co.* v. *Lauderdale County,* supra.

A writ of error lies from this court only to the final judgment of the lower court. Thompson's-Shannon's Code, Section 4911. It would not lie to review a decree, such as the one herein, which on its face showed that the cause was retained in the Chancery Court for further proceedings.

The circumstances of *Mengle Box Co.* v. *Lauderdale County,* supra, were exceptional. The Chancellor entered, in reality, a final decree, although not so phrased. Improperly he allowed an appeal as under Thompson's-Shannon's Code, Section 4889. Inasmuch as the cause was up, and the decree was final in substance, this court treated the appeal as if an appeal of right from a final decree. But usually, unless Thompson's-Shannon's Code, Section 4889, applies, a decree must be final in form as well as in effect before it can be reviewed on appeal or writ of error. Otherwise, as to writ of error, the clerk of this court, from whom the losing party below might as a matter of right obtain said writ within one year from the judgment below (Thompson's-Shannon's Code, Sections 4912, 4916), would be called on to oust the Chancellor of jurisdiction of a cause which he might have expressly retained.

A case is thus presented to us by the petitioner in which the Chancellor rendered a decree denying all relief sought by complainant, final in fact though not so on its face, and petitioner is without other remedy to review the proceedings below. In such a case we think the writ of *certiorari* lies.

This court has broad powers, inherent and statutory, with respect to the issuance of the writ of *certiorari* to enforce its supervisory jurisdiction of the proceedings and judgments of inferior tribunals.

"The cases in which it will lie cannot be defined. To do so would be to destroy its comprehensiveness and limit its usefulness. It is peculiarly applicable to all cases . . . where no appeal or writ of error is allowed, or these remedies have been lost without fault or negligence of the applicant and in all cases where errors in the adjudications of inferior courts over the judgment of which this has a revisory jurisdiction are sought to be corrected, and there is no other plain, speedy and adequate remedy; and whenever this writ will lie, a *supersedeas* will be granted to stay the proceedings, under the judgment or decree sought to be reviewed, in the sound discretion of the court, much the same as in cases where it will be where a writ of error is granted." *Campbell* v. *Tennessee Central R. Co.,* 109 Tenn., 640, 648.

*Staples* v. *Brown,* 113 Tenn., 641, and *State* v. *Bockman,* 139 Tenn., 422, show that in all cases where an inferior tribunal has been vested with judicial powers, and where no appeal nor writ of error lies for the correction of errors of such judicatory, the Circuit Court has jurisdiction to review the action of said tribunal on writ of *certiorari.* As to this court, Thompson's-Shannon's Code, Section 6329, provides "The court has no original jurisdiction; but appeals, writs of error, *or other proceedings* for the correction of errors lie from the inferior Courts of Law and Equity within each division to the Supreme Court held for that division." Italics ours.

This court or the Court of Appeals, in our opinion, has the same jurisdiction to award the writ of *certiorari,* in cases where appeal or writ of error does not lie, to correct the errors of inferior Courts of Law and Equity, that the Circuit Court has in such cases to award said writ to correct the errors of tribunals inferior to that court.

For a further discussion of the office of the writ of *certiorari* issuing from this court see *Clements et al.* v. *Roberts et al.,* 144 Tenn., 129; *State* v. *Hebert,* 127 Tenn., 241; *Conners* v. *Knoxville,* 136 Tenn., 437. This then brings us to the merits of the case and requires some further statement of the facts set out in the pleadings.

It appears from the bill that the Peoples Savings Bank of Jackson is being wound up by S. S. McConnell, Superintendent of Banks, acting as Receiver of that institution under appointment of the Chancery Court. The petitioner Cockrill is indebted to said Bank by notes in the sum of about $15,000. As security for said indebtedness Cockrill pledged to the bank ten promissory notes of $1000 each, payable to bearer, which ten notes are secured by deed of trust upon a tract of land containing 675 acres in Madison county, Tennessee, belonging to said Cockrill. The indebtedness of Cockrill to the Bank is further secured by a written instrument, in form a bill of sale, but said to be in reality a mortgage upon the standing timber upon the aforesaid tract of land. The bill averred that the said McConnell, Receiver, had caused the trustee of the trust deed above mentioned to advertise complainant's said land for sale, and that said Receiver was proposing to have said land sold and the proceeds applied on the indebtedness of complainant to said Bank.

The bill then set out that prior to the receivership for said Bank, that institution had been appointed and qualified as guardian for Sue Norfleet, a *non compos mentis,* and that complainant had become surety on the guardian's bond in the sum of $28,000; that said Bank had breached the conditions of the bond and that suit had been instituted upon said bond and was pending for an amount approximating $14,000.

The bill again set out that the said Bank, prior to the receivership, had been appointed and qualified as guardian of Boyd Norfleet, a *non compos mentis,* and that complainant had become surety upon the guardian's bond in the sum of $28,000; that the said Bank had breached the conditions of the bond, and that suit had been brought upon said bond and was now pending, for an amount approximating $14,000.

It further appeared from the bill that the complainant along with others had signed a bond for $25,000 for the purpose of securing to C. T. Noel, trustee, a deposit of certain funds of Madison county with the said Bank and it was averred that the conditions of this bond had been breached.

The bill furthermore alleged that the complainant, along with others, had signed a bond for $100,000 to C. T. Noel, trustee, to secure a deposit of certain Federal Aid Road funds, belonging to Madison county, with said Bank. It was stated that the conditions of this bond had been breached by said Bank.

The bill charged that the Bank was insolvent and that the complainant was unable at the time to state what his ultimate liability as surety upon the several bonds would amount to, but he was advised it would reach a total of many thousand dollars.

As before indicated the only relief prayed by the bill was the issuance of a writ of injunction to restrain the trustee under the mortgage from advertising or exposing to sale complainant's property, and restraining the Receiver from disposing of any security which he had for complainant's indebtedness to said Bank, and restraining the Receiver from bringing any suit against complainant for his indebtedness to the Bank, until the liability of the Bank to complainant could be determined or until

further orders of the court, to the end that complainant's right of equitable set-off might be preserved to him.

The answer admitted that complainant was indebted to the Bank as alleged and that the Bank had taken the securities for such indebtedness described by complainant. It was also admitted that, under the direction of the Receiver, the trustee of the mortgage was proposing to sell complainant's land, and apply the proceeds thereof to the payment of complainant's indebtedness to the Bank.

The answer admitted that the complainant as surety for the Bank executed the several bonds as described in the bill but denied that the Bank had breached the conditions of these bonds. The answer went on to state, however, as to the claims of the Misses Norfleet, for whom the Bank was guardian, that such claims had no preference in the law, but that they must be treated as all other claims against the Bank, and had been so treated by the Receiver, and that two dividends of fifteen per cent each had been paid on said claims. It is thus manifest that the funds of these wards have been mingled with the funds of the Bank and not kept separately. It, therefore, follows that the condition of these guardian's bonds have been breached by the Bank, and if the Bank proves insolvent there will necessarily be a liability adjudged against complainant as surety. And if the Bank proves insolvent, necessarily liability will be adjudged against complainant as surety on the bonds to secure county deposits.

The only response contained in the answer as to the charge of insolvency made in the bill is as follows:

"Defendants show to the court that there are assets of the Bank, enough to pay all its indebtedness, provided it can be reduced to money. They further show that the

Receiver and Liquidating Agent and Attorneys of the Bank are reducing the assets of the Bank to money as fast as they possibly can, but like the complainant in this case, they find many who are throwing every obstacle in their way that they possibly can and deferring the payments of just debts as long as possible.''

This is no answer to the charge of insolvency made by complainant and no adequate denial thereof. Such a response is equivocal and without weight. No Bank was ever insolvent on paper, so far as we know. All insolvent Banks have enough assets to pay their indebtedness ''provided it can be reduced to money.''

The answer denies the right of the complainant to the particular relief sought by the bill, and denies complainant's right to equitable set-off. These denials, however, involve only questions of law and, as said in the outset, the answer raises no material issue of fact. Hence this court takes jurisdiction.

A surety, who has paid a demand against his insolvent principal is entitled to enforce an equitable set-off against a demand of his principal against him, sued on by the principal's trustee or assignee for the benefit of creditors. *Nashville Trust Co.* v. *Bank,* 91 Tenn., 336; Bank Cases, 92 Tenn., 437; *Lumber Co.* v. *Lumber Co.,* 128 Tenn., 11. Maturities of the respective claims are not material.

It is urged for the Receiver that the complainant herein can have no subsisting claim against the Bank, as to which he would be entitled to equitable set-off, until he discharges his obligations as surety for the Bank and becomes subrogated to the rights of the Bank's creditors against it. There are many cases, however, in which equity will aid a surety before he is damnified—many cases in which the surety may have exoneration.

Where the principal debtor is insolvent, his surety may proceed against him before paying the debt, for indemnity, or to subject particular assets to the payment of the debt, and where the principal is dead, the surety may file. a bill *quia timet* to compel the executor to exonerate him. *Miller* v. *Speed,* 56 Tenn. (9 Heisk.), 196, citing Adams Equity, 270 Note 1. In the same case it was held that a Court of Equity would aid a surety when by the acts or change of circumstances of his principal he was in danger of suffering loss.

In *Henry* v. *Compton,* 39 Tenn. (2 Head), 549, a slave was sold under decree of court, and a lien retained to secure the purchase money. The purchaser also gave bond and security. The purchaser became insolvent and the slave was levied on by his creditors. The surety was, without payment of the bond and subrogation, permitted to maintain his bill, have other creditors enjoined, and the slave sold and the proceeds applied to payment of the bond.

So it was held that a surety before payment of the debt might impeach a fraudulent conveyance by his principal of the latter's property and obtain exoneration. *Greene* v. *Starnes,* 48 Tenn., (1 Heisk.), 582; *Howell & Maget* v. *Cobb,* 42 Tenn. (2 Cold.), 104.

On the same theory this court held that a principal liable on account of the misconduct of an agent, pending determination of the amount of said liability, might have an injunction against enforcement of the agent's judgment against said principal. *Railroad* v. *Greer,* 87 Tenn., 698.

The doctrine of the exoneration of sureties is, therefore, well established in Tennessee as appears from the decisions just mentioned. So far this court has not had occasion to apply this doctrine to facts like those ap-

155 Tenn.—23.

pearing in the case before us. Such application has, however, been frequently made to similar facts in other jurisdictions.

In *Mattingly* v. *Sutton et al.,* 19 W. Va., 19, the plaintiff Mattingly was surety upon Sutton's appeal bond. Mattingly was also indebted to Sutton, the latter having obtained a judgment against him, part of which was assigned. Mattingly obtained injunction against the enforcement of the judgment against him. After reviewing the authorities the court said:

"It seems to me further, that it was the right of the plaintiff as the surety of Sutton in said appeal in equity and upon principles settled in courts of equity under the circumstances and facts appearing in this case to withhold the amount of the said judgment of Sutton against him, including principal, interest and costs, for his indemnity against the said Barrett judgment against said Sutton and plaintiff as his security, as far as it would go, and to apply the same to the payment of the said Barrett judgment; and that when it shall be made to appear to the court, that the plaintiff has paid the amount of the said judgment of Barrett against Sutton and him including the principal, interest and costs, the circuit court should perpetuate the injunction heretofore allowed at the costs of the defendants. Under the facts appearing in this case the defendants, who are assignees of said Sutton, stand in no better situation than Sutton would, if he had made no assignment, the debt assigned not being negotiable in its nature or character, the assignees respectively took their assignments subject to the equities of the plaintiff as the surety of Sutton as aforesaid."

In *Abbey* v. *Van Campen, Administrator,* 1 Freeman's Chy., (Miss.), 273, the surety filed his bill to restrain

the collection of a judgment at law against him in favor of the administrator of his principal, until the notes on which he was surety for the decedent were paid. The injunction was awarded and the court said:

"A court of equity would not permit a plaintiff at law to enforce against the defendant the collection of a debt, when the defendant stood as surety for the plaintiff to an amount greater than that sued for, unless the plaintiff would fully indemnify the defendant against his liability as his surety, and especially if the plaintiff were shown to be insolvent. It would be rank injustice to permit a principal to collect a debt from his surety and at the same time leave his surety to pay a debt for him without the most distant hope of reimbursement. A surety has in respect to his liability the rights of a creditor as against his principal; and upon the insolvency of the principal debtor he may retain any funds belonging to such debtor by way of indemnity against his liability; otherwise a surety in such a case would be wholly without remedy, when the plainest principles of justice are in his favor."

In *Richardson* v. *Merritt*, 74 Minn., 354, the defendant was indebted to a Bank by note. The Bank became insolvent and made as assignment for the benefit of its creditors. The assignee brought suit against defendant on his note. Defendant showed that he along with others had executed a bond for the Bank to secure certain county deposits. Under such circumstances the court held that the defendant was entitled to have proceedings by the assignee of the Bank against him stayed for a reasonable time, until the amount of his liability on the aforesaid bond was determined, to the end that defendant might enforce his right of set-off.

In accord with the foregoing cases are *Feazle* v. *Dillard,* 5 Leigh (Va.), 30; *Walker* v. *Dicks,* 80 N. C., 263; *Sims* v. *Wallace,* 6 B. Mon. (Ky.), 410; *Beaver* v. *Beaver,* 23 Pa., 167.

Set-off is one of the heads of equity jurisdiction. This court has said that "courts of equity will extend the doctrine of set-off and claims in the nature of set-off, beyond the law, in all cases where peculiar equities intervene between the parties." *Parker* v. *Britt,* 51 Tenn. (4 Heisk.), 243. For other illustrations see *Brazelton* v. *Brooks,* 39 Tenn. (2 Head), 194; *Edminson* v. *Baxter,* 4 Hay., 112. To preserve the right of set-off, as against his insolvent principal, to a surety seeking exoneration, it seems entirely consistent with our previous decisions that an injunction be awarded as prayed in the bill. The complainant should not be deprived of his property in derogation of his plain equitable rights.

The case of *Irvine* v. *Dean,* 93 Tenn., 346, relied on by the defendants, does not involve the rights of a surety at all. As noted in *Nashville Trust Co.* v. *The Bank,* 91 Tenn., 336, the courts do not uniformly apply the doctrine of equitable set-off where one of the parties is insolvent. Certain decisions from other jurisdictions mentioned in defendants' brief seem to contain expressions opposed to settled law in Tennessee, and naturally we do not follow these decisions.

The decree of the Chancellor herein shows that in deference to his request the sale sought to be enjoined by the bill was deferred to permit time in which the court might consider the application for an injunction. We might very well assume, the injunction having been denied by the Chancellor, that the trustee would again advertise complainant's property for sale, and award an injunction as prayed in this bill *quia timet.*

The petition for *certiorari* indeed avers that the property has again been advertised for sale by the trustee. It is insisted by the defendants that this is an allegation of a fact occurring since the record of the proceedings below was made up and that we cannot look to such an allegation. As a matter of course, this court must try the real case upon the record presented to the lower court. This court, however, has authority to "issue all writs and process necessary for the exercise and enforcement of its jurisdiction." Thompson's-Shannon's Code, section 6336. To protect its jurisdiction, to prevent such jurisdiction from being trifled with or rendered ineffectual, this court may consider matters transpiring after a cause is heard in the lower court. Thus in *Ward* v. *Alsup,* 100 Tenn., 619, the court looked to affidavits to determine whether an appeal should be dismissed as presenting a colorable case and a sham controversy. In *State ex rel.* v. *Crump,* 134 Tenn., 121, the Chancellor rendered a decree of ouster November 4, 1915. There was a question as to whether the decree of ouster applied to a term of office to which defendants had been elected beginning January 1, 1916. This court heard statements to the effect that defendants were about to assume office January 1, 1916, before the court could pass on their right so to do, and issued an order restraining defendants from so proceeding until the cause was finally disposed of in this tribunal.

The writ of *certiorari* has been heretofore issued. There is no necessity for the issuance of the writ of *supersedeas* herein. There is no court order *in fieri* to stay. *Howell* v. *Thompson,* 130 Tenn., 311.

The restraining order heretofore made upon the trustee will be continued and the said trustee and the Receiver of the Bank will be required to desist from sub-

jecting complainant's real estate or other property to sale on account of the Bank's claim against the complainant until further orders of the Chancellor.

This cause will be remanded to the Chancery Court of Madison county and retained in that court until complainant has a reasonable opportunity to have fixed and determined his liability upon the several bonds which he executed as surety for the Bank, and to discharge said liability. To the extent that the said liability on said bonds is discharged by the complainant, to the same extent will complainant and his property be discharged of liability to the Bank by appropriate decree of the Chancellor.

If after a reasonable time, the complainant does not ascertain and discharge his liability on said bonds, and it should appear to the court that complainant was unable or unwilling to discharge said liability, the Chancellor may authorize the Receiver and the Trustee to proceed against the complainant and enforce the Bank's lien against his property, or said lien may be enforced by the Chancellor's decree, but the amount so realized must be first applied, and all applied if necessary, upon complainant's liability on said bonds, and for all sums so applied complainant shall have proper credit on his indebtedness to the Bank.

All suits against complainant on account of the matters herein considered, by the Receiver or the Trustee, are restrained until further orders of the Chancellor.

The costs incident to this petition for *certiorari* will be paid by the Receiver. Costs below will be disposed of by the Chancellor later. The cause is remanded for further proceedings in accord with the views herein expressed.