BANK OF WHITEHOUSE *v.* BALDRIDGE, *et al.*

(*Nashville.*   December Term, 1915.)

1. **INTERPLEADER.** Nature of remedy.

A bill of interpleader is ordinarily filed when two or more persons claim the same debt, or duty, or other thing, from the complainant by different or separate interests; and he, not knowing to which of the claimants he ought of right to render the same debt, etc., and fearing that he may suffer injury from their conflicting claims, files a bill against them, and prays that they may be compelled to interplead, and state their several claims, so that the court may adjudge to whom the same debt, etc., belongs.  (*Post, pp.* 8-16.)

Cases cited and approved:   Stephenson v. Burdette, 10 L. R. A. (N. S.), 748;   Ranch v. Ft. Dearborn Nat. Bank, 11 L. R. A. (N. S.), 545.

2. **INTERPLEADER.** Grounds. In general.

The essentials of a bill of interpleader are that two or more persons must be claiming adversely to each other, from the same person, the same thing, debt, or duty, which debt, etc., must be specific and definite, that the holder thereof must have no title, claim, or interest in or to it, and that he must be so situated that if he comply with the demands of either claimant he is in danger of being held liable therefor by the other, and that he must not be under any special liability to either claimant with reference to the thing in dispute, but must be absolutely indifferent between them, and that there must be annexed to the bill an affidavit of noncollusion, unless the bill avers noncollusion, and is sworn to.  (*Post, pp.* 8-16.)

3. **INTERPLEADER.** Requisites. Identity of debt.

Complainant bank purchased notes given by the purchasers of an insurance company's certificates, partly for cash and partly

for its own certificates of deposit, aggregating $7,129.50, which certificates of deposit the insurance company then sold. Bills were filed against it, one by parties seeking to recover the amount of notes paid to it, on the ground of the fraud of the insurance company to whom the notes were given, another by parties seeking to enjoin it from collecting such notes, and a suit was brought by a bank seeking to recover the face value of the complainant's certificates of deposit. *Held*, that neither class of the claimants against complainant was claiming any debt or thing that either of the other classes was claiming, but that each class of claims was separable, and hence that complainant could not maintain a bill of interpleader. (*Post*, *pp*. 8-16.)

.FROM ROBERTSON

Appeal from the Chancery Court of Robertson County.—J. W. STOUT, Chancellor.

A. E. & J. E. GARNER, for appellant.

R. B. C. HOWELL and LEWIS TILLMAN, for appellee, Brown.

TRUE & DORSEY, for other appellees.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

Joe Brown's demurrer to the bill of the Bank of Whitehouse, seeking to compel Brown to interplead with divers other parties, made defendants to the bill, was properly sustained by the chancellor. In his work, "Suits in Chancery," at section 1106, Chancellor Gibson says:

"A bill of interpleader is ordinarily filed when two or more persons claim the same debt, or duty, or other thing, from the complainant by different or separate interests; and he, not knowing to which of the claimants he ought of right to render the same debt, duty, or other thing, and fearing that he may suffer injury from their conflicting claims, files a bill against them, and prays that they may be compelled to interplead, and state their several claims, so that the court may adjudge to whom the same debt, duty, or other thing belongs."

See, also, sections 1107, 1108, and 1109. At section 1110, the learned author sets out the essentials of a bill of interpleader thus:

"(1) Two or more persons must be claiming 'adversely to each other, from the same person the same thing, debt, or duty. (2) This thing, debt, or duty, must be specific and definite, and the holder thereof must have no title, claim, or interest, in or to it. (3) The holder must be so situated that, if he comply with the demands of either claimant, he is in danger of being held liable therefor by the other. (4) The holder must not be under any special liability to either claimant with reference to the thing in dispute, but must be absolutely indifferent between them. (5) And there must be annexed to the bill an affidavit of noncollusion unless the bill avers noncollusion, and is sworn to."

For general authority on the question, see those cited by Mr. Gibson to sustain the text of the sections

above noted, and also the case notes to *Stephenson* v. *Burdette,* 10 L. R. A. (N. S.), 748, and *Rauch* v. *Ft. Dearborn National Bank,* 11 L. R. A. (N. S.), 545.

From the bill of the Bank of Whitehouse, and the exhibits thereto, it appears that the National Assurance Company, a Georgia corporation, sold to sundry parties what are called "income certificates." The certificates were issued by said company, and it, upon sale of such certificates, would take the notes of the purchasers thereof. These notes were made payable to the order of the makers, and by them indorsed. The company did a large business in the sale of these certificates, and after it had, by separate sales made upon the plan above indicated, floated a large number of its certificates and acquired the separate notes of a large number of persons payable and indorsed respectively as above stated, the company sold these notes to divers country banks. In its sale of these notes to the country banks, the company would accept such part of the proceeds of each note in cash as it and the particular bank could agree upon, and for the balance the company would would take a certificate of deposit, issued by the bank (bearing three per cent. interest for one year, but no longer unless renewed), and maturing at one year from date of issuance. In the generous distribution of its patronage over quite a wide territory, the company did not overlook the Bank of Whitehouse, but, on the contrary, sold notes to it for which the bank paid part cash (the amount of the cash not appearing), and for

the balance the Bank of Whitehouse issued its certifi-
cates of deposit.   The aggregate amount of the cer-
tificates so issued by it appears by its bill to have
been the sum of $7,129.50. After obtaining these cer-
tificates of deposit from the Bank of Whitehouse, the
company sold said certificates to divers persons, pre-
sumably for cash.   What became   of this cash does
not appear, but it does appear that the transactions
outlined above occurred prior to the 1st day of Sep-
tember, 1912, at or about which date the assurance
company was called on by the Insurance Department
of the State of Georgia for a full report of its assets
and liabilities, which report was submitted on Septem-
ber 26, 1912, and showed the company to be then in-
solvent.   Thereafter its affairs were by legal pro-
ceedings in Georgia placed in the hands of a receiver
in the month of October, 1912.   The name of the re-
ceiver was Jerome Moore, and he is made a party de-
fendant to the bill of the Bank of Whitehouse in this
cause.   After the receiver was appointed, the Bank of
Whitehouse became involved in controversies with the
parties defendant to this bill, and these controversies
were of three general classes, which, for convenience,
will be noted accordingly, and when the bill of the Bank
of Whitehouse, seeking to compel each of its adver-
saries to interplead with each other, was filed in this
cause, the adversaries of the bank were maintaining
against it separate suits in the chancery court of Rob-
ertson county, either by original bill or intervention
proceedings; each one of said suits falling within one

or the other of the three general classes above mentioned.

First.    The bank had been sued by J. T. Murphy, J. L. Baldridge, and H. T. Webb.    Each of these complainants had filed against the bank his separate bill of complaint.    Each of these complainants by his bill sought to recover from the bank the sum of $1,000 with interest.    The ground of recovery relied on in each case was that each complainant had, by fraud of the assurance company, been induced to execute his note or notes payable to his order, and indorsed by him in blank, and to deliver such note or notes to said insurance company in consideration of its worthless income certificates, and that said company had sold said note or notes to the Bank of Whitehouse, and that each complainant had respectively paid the amount of his note or notes at maturity to the bank, and that, because of fraud in the transaction set out in each bill, each complainant was entitled to recover from the bank the full amount of the note or notes which each complainant had paid to the bank as aforesaid.

Second.    W. O. Luton filed his separate bill against the bank seeking to enjoin it from collecting his note which the bank held, having received the same from the assurance company, and this relief was prayed upon the ground that the assurance company had fraudulently induced the complainant in that suit to execute and deliver said note to it, in consideration of its delivery to him of worthless income certificates, and, on account of this and other frauds averred in

the bill, the relief above indicated was prayed for by the complainant. On like grounds as those set out in the case last above was based the joint bill of L. M. Merritt and Miss Nellie Merritt; by which it was sought to enjoin the bank from collecting two notes made by the Merritts and delivered to the assurance company. One of these notes was for the sum of $300, the other was for the sum of $200, and each of them, the bill averred, was to be held by the bank as the transferee of the insurance company.

Third. In this class falls the suit by petition of intervention brought by the Riceville Bank, seeking to recover from the Bank of Whitehouse the face value with interest of certain certificates which the bank of Whitehouse had theretofore issued, and of which certificates the Riceville Bank averred itself to be the true owner. These certificates are described as follows: Certificate No. 155, dated June 5, 1912, $625. Certificate No. 162, dated June 8, 1912, $475. The face value of these certificates was the sum of $1,100, which the Riceville Bank sought to recover from the Bank of Whitehouse, together with interest thereon.

In the third class also falls the suit by intervention petition of the Murphy State Bank, seeking to recover from the Bank of Whitehouse, upon certain other of its certificates of deposit described as follows: Certificate No. 160, dated June 7, 1912, $234.50. Certificate No. 170, dated June 18, 1912, $760. Certificate No. 173, dated June 20, 1912, $475. Certificate No. 174, dated June 24, 1912, $475. The total amount sued for

by the Murphy State Bank, as shown by the above certificates, was $1,944.50.

Finally, in the third class falls the suit by original bill of Joe Brown, seeking to recover from the Bank of Whitehouse on its certificates of deposit, described as follows: Certificate No. 163, dated June 10, 1912, $950. Certificate No. 164, dated June 10, 1912, $1,235. Certificate No. 165, dated June 12, 1912, $950. Certificate No. 161, dated June 12, 1912, $950—making the total amount sought to be recovered by Joe Brown $4,085, together with interest.

From the foregoing analysis of the suits falling within the three general classes, it is to be observed that the aggregate principal sum of the demands made by these suits against the Bank of Whitehouse was the sum of $7,129.50, which is the same amount that its bill shows that its outstanding certificates of deposit aggregated.

It is apparent that the complainants of the first class say to the bank, in substance, "Our demand on you is that you return to us with interest the money we paid you in liquidation of our notes." And so we see the specific "thing, debt, or duty" which the complainants of this class were demanding from the bank at the time it filed its bill in this cause. It is also apparent that the complainants in the second and third classes of suits are asserting no interest whatsoever in the particular thing, debt, or duty demanded by the complainants in the first class of suits.

Passing now to the complainants of the second class of suits: These say to the bank: "Return to us our notes, or bring them into court to be cancelled by its decree." It is manifest that the thing, debt, or duty which these complainants are asserting against the Bank of Whitehouse is entirely separate and apart from any demands made against the bank by the complainants in the first and third classes of suits.

We now come to consider the complainants of the third class: Their demand upon the bank is the full face value, with interest, of the certificates of deposit issued by the bank and described in the respective pleadings of the complainants who belong to this class, and it is clear that the complainants in the first and second classes of suits have and are asserting no interest under these pleadings in the thing, debt, or duty which the complainants of the third class are asserting against the bank. The question then arising is: How can these three classes of complainants be required to interplead, since it is apparent that neither class is claiming against the bank any thing, debt, or duty that either one of the other classes is also claiming against the bank. It is clear that a controversy between these complainants of the different classes does not exist and it is impossible under their pleadings. Each class of complainants has its separable controversies against the Bank of Whitehouse, but the bank holds no stake in which either of the classes of complainants asserting claims against it is in conflict

with any claim made by the other two classes of complainants.

It results that the demurrer of Joe Brown was, in our opinion, well made, and the decree of the chancellor is, accordingly, affirmed.