HENEGAR v. BRANNON et al.—137 S. W. (2d), 889.

Middle Section.   September 9, 1939.

Petition for Certiorari denied by Supreme Court, March 8, 1940.

Thurman Thompson and S. E. Wasson, both of Lewisburg, and W. A. Guild, of Nashville, for appellants.

Gates & Gates, of Lewisburg, for appellee.

FELTS, J. This is a suit by Ernest Henegar for reimbursement for money paid as surety for Howard Brannon; and for this purpose he also sought to subject two judgments Brannon had obtained in the Circuit Court of Marshall County against the Marshall County Creamery, Inc., a Tennessee corporation of which Henegar is general manager. It filed its answer as a cross-bill in the nature of a bill of interpleader, paid the amount of the judgments into court, asked that Henegar and Brannon be required to interplead, and that the chancellor determine which was entitled to the fund. Brannon denied Henegar had paid anything as surety for him, and he and Henegar both claimed the fund. The chancellor dismissed Henegar's bill and decreed the fund to Brannon.

Henegar and the Marshall County Creamery, Inc., appealed and both have assigned the same errors, by which they insist the chancellor was wrong in decreeing that neither of them was entitled to any recovery against Brannon or to the money in court, and that Brannon was entitled thereto.

The material facts are undisputed. As·stated, Henegar was general manager of the corporation, the Marshall County Creamery, Inc. Brannon was hauling milk for it with his truck. He stated to Henegar his truck was about to be taken for a debt of $400 he owed, and sought·to borrow this sum from the Creamery to pay this debt. Henegar told him it was contrary to the policy of the Creamery to make such a loan, and suggested he ask the bank for a loan. He said he had, but without success. A few days later Henegar asked the Peoples & Union Bank at Lewisburg to lend Brannon $400. It was willing to do this, provided Henegar would secure the note. He preferred not to sign the note, but to secure it by a separate written agreement with the bank, which he did, keeping this fact a secret from Brannon. The bank loaned Brannon $400, taking his note therefor dated January 6, 1937 and due in six months.

The Creamery paid Brannon on the 15th of the month what he had earned during the previous calendar month. The note matured July 6, 1937. Henegar testified that he delivered the Creamery's check to Brannon for the amount due him on July 15, upon his promise to pay therefrom $200 on the the note, which he failed to do; and that he made. a similar promise when he. got the Creamery's check on August 15, and failed to keep that promise. Brannon denied that he made any such promises. He said he told Henegar he had 700 or 800 bushels of wheat which he would sell and pay the note, but preferred to hold the wheat a little longer for a better price.

On September 15, 1937 the Creamery owed Brannon $253.80 for the hauling he had done during August. On September 14 Henegar, as general manager of the Creamery, drew its check for this amount on its account in the Peoples & Union Bank, payable to Brannon, endorsed Brannon's name on the back of the check "By Ernest Henegar," took it to the bank, and requested the bank to apply it on the note, which the bank did. On the next day, when Brannon came for his milk check and was informed by Henegar of what Henegar had done, he protested very strongly, threw the milk cans off his truck, and quit. Two days later he sued both the Creamery and Henegar in the circuit court for the $253.80. On October 15 the Creamery owed Brannon the further sum of $111.50 for the hauling he had done during the first 15 days of September up to the time he quit. Henegar likewise drew the Creamery's check for this amount on its account at the bank, payable to Brannon, endorsed Brannon's name thereon "By Ernest Henegar," took it to the bank, and had the bank apply it on the note. After these two payments, plus $0.10 which Brannon had in the bank and which the bank applied on the note, there remained a balance of $39.24 owing on the note. Henegar drew the Creamery's check for this amount, paid this balance, and the note was marked paid and surrendered by the bank.

It is not claimed that either Henegar or the Creamery had been

given any authority by Brannon to endorse his name on either of these checks, or that he had requested or authorized the Cremery to pay anything on the note for him. Up to that time he had not learned of Henegar's secret agreement with the bank to guarantee payment of the note.

On November 1, 1937 Brannon sued Henegar and the Creamery before a justice of the peace for the $111.50. This suit was tried before the justice and appealed to the Circuit Court of Marshall County. On November 22, 1937 both these suits were tried in that court together, and Brannon recovered judgments against Henegar and the Creamery, one for $253.80 and the other for $72.26. Henegar's motions for a new trial were sustained, the judgments vacated, and the suits dismissed as to him; but the Creamery's motions were overruled and the judgments were allowed to stand against it. On January 1, 1938 executions issued and were levied on a quantity of butter and cheese of the Creamery. It gave a delivery bond and retained the property. On January 3, 1938 Brannon filed a bill in chancery seeking to enjoin Henegar and the Creamery from interfering with the collection of these judgments, but this bill was withdrawn about the time Henegar filed the present bill on January 8, 1938.

In the decree appealed from by the Creamery we can perceive no error against it. True it paid Brannon's note; but it was not bound thereon and was not authorized to pay the note, either by previous request or subsequent ratification on his part. Such payment was not only voluntary but officious and gave it no right, either by set-off, counterclaim, or independent suit, to recover of him what it thus paid. Young v. Dibrell, 26 Tenn. (7 Humph.), 270; McNairy v. Thompson, 33 Tenn. (1 Sneed), 141; Chaffin v. Campbell, 36 Tenn. (4 Sneed), 184, 185, 190; Still v. Equitable Life Assur. Soc., 165 Tenn., 224, 54 S. W. (2d), 947, 86 A. L. R., 382; Crumlish's Adm'r v. Central Imp. Co., 38 W. Va., 390, 18 S. E., 456, 23 L. R. A., 120, 45 Am. St. Rep., 872; 21 R. C. L., 32, 33; 48 C. J., 734, 738. This was doubtless the ground upon which the judgments went against it in the circuit court. These judgments had become final and its property had been levied on thereunder, and it had given a delivery bond for the property. It made no attack on these judgments in its cross-bill. After such judgments it had no right to maintain a bill of interpreader. Carroll v. Parkes, 60 Tenn. (1 Baxt.), 269; Bank of Whitehouse v. Baldridge, 134 Tenn., 7, 184 S. W., 158; Gibson's Suits in Chancery, (3 Ed.), sec. 1107. But having paid the amount of the judgments into court, and asked the chancellor to decree who was entitled thereto, it cannot complain of the decree directing payment to Brannon, its judgment creditor.

Nor is there in the decree any error against Henegar. While he claimed in his bill he had paid the note, he admitted in his deposition that he had not, but that the Creamery had paid it. A

surety has no right to reimbursement by his principal until he has paid the principal's debt. While the surety may, before making such payment, maintain a bill quia timet for exoneration (Cockrill v. People's Savings Bank, 155 Tenn., 342, 293 S. W., 996), he cannot maintain a suit or have a judgment or decree for reimbursement. To entitle him to such a decree or judgment he must allege and prove the amount he paid. Oneal v. Smith, 78 Tenn., (10 Lea), 340; Vermeule v. York Cliffs Improvement Co., 105 Me., 350, 74 A. 800, 134 Am. St. Rep., 553; Butterworth v. Ellis' Adm'x, 33 Va. (6 Leigh), 106; Note, White & Tudor's Leading Cases in Equity, Vol. 1, p. 135; Note, 134 Am. St. Rep., 561; Note, Ann. Cass., 1912B, 625; 21 R. C. L., 1100, 1106, 1117, 1118; 50 C. J., 250. This is not a bill quia timet by Henegar for exoneration, but a bill for reimbursement for money paid by him to Brannon's use. He is not entitled to this relief, since he paid nothing on the note, but it was paid by a stranger or volunteer under circumstances giving it no right to call on Brannon for reimbursement.

But it is said for Henegar that he rendered himself liable to repay the Creamery what it paid on Brannon's note, and that, irrespective of whether it can look to Brannon for reimbursement, Henegar ought to be allowed to do so. We do not think so. Henegar's liability to the Creamery arises from his wrongful act as its agent. Brannon did not participate in this act, ratify it or accept any benefits therefrom, and is not liable therefor either to Henegar or the Creamery.

Whether the Creamery could maintain a bill in equity against the bank and Brannon, praying that if he ratify its payment of the note he be required to reimburse it therefor, and if not, that the note be treated as unpaid and enforced in its favor as an equitable assignee, we are not at liberty to consider, since this question is not before us. Nor can we consider whether the judgments Brannon obtained in the circuit court against the Creamery constitute an estoppel against its right to maintain such a bill.

Appellants' assignments of error are overruled, and the chancellor's decree is affirmed. Appellants will pay the costs of this appeal.

Faw, P. J., and Crownover, J., concur.