IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2018 Session

## C & C NORTH AMERICA INC. D/B/A COSENTINO v. NATURAL STONE DISTRIBUTORS, LLC, ET AL.

**Appeal from the Chancery Court for Shelby County
No. CH-16-1671   JoeDae L. Jenkins, Chancellor**

———————————————————

## No. W2017-01922-COA-R3-CV

———————————————————

This is an appeal from an interpleader action filed by a party who owed funds that were claimed by two other parties. The trial court found that interpleader was appropriate pursuant to Tennessee Rule of Civil Procedure 22.01 and allowed the disputed funds to be deposited with the court. The two remaining claimants to the funds filed cross-motions for summary judgment. The trial court found that one party was originally owed the funds but that this party owed a debt to the other claimant. As such, the trial court ruled that the funds would be paid to the party who was not originally owed the funds but who had the outstanding claim against the other claimant. We reverse in part, affirm as modified, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed as Modified, and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

R. Spencer Clift, III, and Nicole D. Berkowitz, Memphis, Tennessee, for the appellant, Seven Stone Surface Fabrication, LLC.

Ronald D. Krelstein, Germantown, Tennessee, for the appellee, Natural Stone Distributors, LLC.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

C&C North America, Inc. d/b/a Cosentino ("Cosentino") is a Delaware corporation that manufactures stone surfacing products. Seven Stone Surface Fabrication, LLC, ("Seven Stone") had its principal place of business in Georgia but conducted business in Tennessee pursuant to a "Fabrication Agreement" authorizing it to fabricate, market, sell, install, and service Cosentino products. Over time, the parties conducted business in accordance with the Fabrication Agreement, and Cosentino incurred 88 invoices reflecting that it owed Seven Stone $153,008.34. Before this amount was paid, however, Seven Stone was administratively dissolved by the secretary of state.

Cosentino and Seven Stone had also conducted business with Natural Stone Distributors, LLC ("Distributor"), a Tennessee company with its principal place of business in Shelby County. Pursuant to a separate contract, Distributor was authorized to sell Cosentino products to authorized fabricators. Seven Stone had submitted a credit application to Distributor in order to purchase goods on credit and subsequently made a number of its purchases from Distributor. When Seven Stone was administratively dissolved and owed an outstanding balance on its account, Distributor threatened to file an attachment action against Cosentino in Texas against the funds Cosentino owed to Seven Stone.

On October 27, 2016, Cosentino filed a complaint for interpleader in the chancery court of Shelby County pursuant to Tennessee Rule of Civil Procedure 22.01, which provides, in pertinent part:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he or she is not liable in whole or in part to any or all of the claimants.

Cosentino's complaint for interpleader named as defendants Seven Stone and Distributor. According to the complaint for interpleader, Cosentino was in possession of $150,000 "that both defendants allege is their property." According to the complaint, Distributor alleged that Seven Stone owed it $135,000 plus accumulated charges. The complaint stated that because of the conflicting claims, Cosentino was in doubt as to which of the defendants was entitled to the property and feared that it may be exposed to double or multiple liability. The complaint stated that Cosentino took no position on the issue of ownership of the funds and wished to pay the funds into court so that the defendants could be required to interplead and settle the matter between themselves. Cosentino asked the court to enjoin the defendants from instituting any other action against it for

recovery of the funds and to discharge it from liability to either defendant upon transfer of the funds to the court.[1]

The following day, before either defendant answered, the trial court entered an order permitting Cosentino to interplead the funds, as it "appear[ed] to the court that [Cosentino] admits liability for the amount of money forming the subject of this action but is in doubt as to who is entitled thereto." The order enjoined the other parties from instituting any other action against Cosentino with regard to the funds.

Distributor filed an answer and cross-complaint against Seven Stone. Distributor agreed that Consentino should be allowed to pay the funds into court in order to prevent duplicate litigation against it concerning entitlement to the funds. In its cross-complaint against Seven Stone, Distributor alleged that Seven Stone had purchased goods from it on credit and incurred an outstanding balance of $130,665.13, plus accrued finance charges, for a total of $139,310.06 due as of October 31, 2016. Distributor alleged that this sum remained unpaid despite its demand for payment, and it sought the entry of a judgment in its favor for this sum.

Seven Stone filed a "consolidated responsive pleading" to the complaint for interpleader and Distributor's cross-complaint and also included a counter-claim against Distributor. Seven Stone admitted that Cosentino owed it $150,000 for outstanding invoices and asserted that its interest in the interpleaded funds was superior to any interest asserted by Distributor. Seven Stone asserted a counter-claim for declaratory judgment against Distributor, alleging: "There exists an actual and justiciable controversy over entitlement to the interpleaded funds." Specifically, Seven Stone alleged, "[t]here exists an actual and justiciable controversy between the parties with respect to whether [Distributor] is an intended third party beneficiary to the Agreement between Cosentino and Seven Stone" and "with respect to whether [Distributor] is an affiliate of Cosentino." Seven Stone noted that its Fabrication Agreement with Cosentino allowed Cosentino to offset any amounts owed by Cosentino against any amounts owed by Seven Stone to Cosentino "or its affiliates." Seven Stone asserted that Distributor was not an affiliate of Cosentino, as the two entities had no common ownership interest and were not commonly controlled. Seven Stone also argued that the Fabrication Agreement was not intended to

---

[1] Rule 22.02 of the Tennessee Rules of Civil Procedure further provides:

Any property or amount involved as to which the party seeking interpleader admits liability may, upon order of the court, be deposited with the court or otherwise preserved, or secured by bond in amount sufficient to assure payment of the liability admitted. The court may thereafter enjoin all parties before it from commencing or prosecuting any other action regarding the subject matter of the interpleader action. Upon hearing, the court may order the party seeking interpleader discharged from liability as to property deposited or secured before determining the rights of the claimants thereto.

benefit Distributor, directly or indirectly. In sum, Seven Stone sought a declaratory judgment that it was entitled to all of the interpleaded funds, and accordingly, it also sought an award of the entire balance of the interpleaded funds.

Seven Stone filed a motion for partial summary judgment that was limited to its claim for the interpleaded funds deposited with the court. Seven Stone again asserted that it had the exclusive right to the interpleaded funds because Distributor was not a party to the Fabrication Agreement between Seven Stone and Cosentino and was not an "affiliate" of Cosentino within the meaning of the contract, and Distributor had not asserted any other legal right to the interpleaded funds. Seven Stone acknowledged its receipt of discovery responses indicating that Cosentino was advised that an attachment action would be filed in Texas against the funds Cosentino owed to Seven Stone. However, Seven Stone argued that its right to the interpleaded funds had no relationship to Distributor's separate cross-claim against Seven Stone for the outstanding balance Seven Stone owed to Distributor and suggested that the latter issue could be "taken up at a later time."

Cosentino filed a motion for discharge, seeking to be relieved of any further participation in the case. Cosentino noted that it had already deposited the sum of $150,000 with the court and reiterated that it had no interest in the deposited funds. Cosentino noted that both defendants had filed answers and that the "the case [was] at issue." Seven Stone filed a response in opposition to Cosentino's motion to be discharged from the case but stated that its opposition was primarily due to Cosentino's request for attorney's fees from the amount deposited with the court. Seven Stone argued that the request for attorney's fees was premature in light of its pending motion for partial summary judgment and also argued that Cosentino should not be entitled to recover its attorney's fees because "this is an improper interpleader Action." Seven Stone argued that attorney's fees are only appropriate when a disinterested stakeholder brings a "necessary" interpleader action and suggested that the instant interpleader action was not necessary and was filed in bad faith. The trial court ultimately entered an order granting Cosentino's motion to be relieved of any further participation in the case and reserved a ruling on Cosentino's request for attorney's fees.

Distributor filed a reply to the motion for partial summary judgment filed by Seven Stone along with its own motion for summary judgment, claiming that it was entitled to a judgment for the principal amount owed by Seven Stone in addition to accumulated late fees, totaling $155,941.26. Distributor argued that it was immaterial whether its claim arose out of the same contract as the one giving rise to Seven Stone's rights and that "the only issue remaining is whether Seven Stone owes anything to [Distributor]." According to the motion for summary judgment, Seven Stone admitted in its discovery responses that it owed an outstanding balance to Distributor of $129,093.49 as of August 1, 2016, which only differed from Distributor's calculation by 19 cents. Additionally, Distributor argued that "when contractual late charges are calculated," that

sum would increase to $155,941.26. Distributor filed a sworn declaration of its employee attesting to these figures with attached accounting documents and emails. As a result, Distributor argued that the trial court should award it the entire balance of $150,000 on deposit with the court. Seven Stone filed a reply in further support of its own motion for partial summary judgment but did not file a response to the motion for summary judgment filed by Distributor or respond to the statement of undisputed material facts submitted by Distributor. Distributor filed an additional reply.

After a hearing, the trial court entered an order granting summary judgment to Distributor and denying the motion for partial summary judgment filed by Seven Stone. Because neither party disputed the statement of material facts submitted by the other, the trial court adopted the statements of fact as its factual findings. The trial court noted that Cosentino deposited $150,000 with the court in order to avoid a multiplicity of lawsuits against it for the disputed sum. The trial court noted its previous ruling permitting interpleader and again concluded that "this is a properly filed interpleader case under Tenn. R. Civ. P. Rule 22." The trial court found that Cosentino owed Seven Stone $153,008.34. The trial court found that Seven Stone purchased merchandise from Distributor on an open account and owed Distributor $129,093.49. The trial court rejected Seven Stone's suggestion that Distributor was required to establish a lien or assignment in order to have a claim to the interpleaded funds at issue in this case. The court reasoned that "once these parties have joined the issue in an interpleader, then it is like any other lawsuit, a lawsuit that has competing claims, one against the other." The court found that Seven Stone had a right to the funds it was owed, but at the same time, Seven Stone did not deny that it owed money to Distributor. In sum, the court concluded that Seven Stone was liable for the debt it owed in the amount of $129,093.49, but the trial court added that it found nothing in any of the documents provided by Distributor to confirm that Seven Stone agreed to pay any late fees or interest charges. Consequently, the trial court limited its award to Distributor to $129,093.46 and awarded the remainder to Seven Stone.[2] The issue of attorney's fees with respect to Cosentino was resolved by consent order. Seven Stone timely filed a notice of appeal.

## II. ISSUES PRESENTED

Seven Stone raises the following issues for review on appeal:

1.     Whether the chancery court erred in determining that Cosentino's complaint for interpleader was a properly filed interpleader action under Rule 22.01 of the Tennessee Rules of Civil Procedure; and

---

[2] We recognize that this award was three cents less than the sum that the trial court found was owed. No one raises any issue on appeal regarding the discrepancy.

2.     Whether the chancery court erred in denying Seven Stone's motion for partial summary judgment and granting Distributor's motion for summary judgment.

In its posture as appellee, Distributor raises the following additional issues:

1.     Did the trial court err in weighing the facts set forth in Distributor's statement of undisputed material facts submitted in support of its motion for summary judgment; and

2.     Did the trial court err by not finding *sua sponte* that Seven Stone was guilty of unclean hands for failure to comply with statutory requirements for winding up the affairs of an administratively dissolved limited liability company.

For the following reasons, we reverse the decision of the chancery court in part, affirm as modified, and remand for further proceedings.

## III. DISCUSSION

### A.     Interpleader

"[I]nterpleader is designed to protect a stakeholder against the vexation of proceedings by two or more doubtful claimants when the whole matter may be settled in a single suit." *Woodard v. Metro. Life Ins. Co.*, 24 S.W.2d 888, 889 (Tenn. 1930). Interpleader permits a "stakeholder who has no claim to the money and is willing to release it to the rightful claimant to put the money in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997) (internal quotation omitted). The "stake" at issue can be a thing, debt, or fund. Lawrence A. Pivnick, 1 Tenn. Cir. Ct. Prac. § 1:27 (2017). Although "a limited fund or some specific, identifiable property" must be involved, "interpleader seldom will be rendered inappropriate because of the nature of the stake." Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 7 Fed. Prac. & Proc. Civ. § 1704 (3d ed. 2018).

Interpleader usually involves a two-stage procedure. Generally, "the stakeholder initiates the proceedings by filing a petition in which it sets forth the claims of the named defendants to a specified thing or fund in its possession, admits liability, disclaims any interest in the thing or fund, and offers to pay the fund into court." Pivnick, 1 Tenn. Cir. Ct. Prac. § 1:27. Thus, in the first stage of the proceeding, the trial court determines whether the stakeholder has properly invoked interpleader. *Id.* If the trial court determines that interpleader is proper, the claimants plead against each other in the second stage if they have not already done so. *Id.* Then, the trial court proceeds to determine the claimants' respective rights to the thing or fund. *Id.*

In the case at bar, Seven Stone argues that the trial court erred in concluding that

this was a properly filed interpleader action under Tennessee Rule of Civil Procedure 22.01. Seven Stone suggests that interpleader should never have been allowed in this case and that all of the trial court's subsequent orders are void as a result.

At the outset, we note that the trial court entered its order permitting Cosentino to interplead the funds the day after the petition for interpleader was filed, before either defendant filed an answer, upon finding that "[Cosentino] admits liability for the amount of money forming the subject of this action but is in doubt as to who is entitled thereto." Thereafter, Seven Stone filed an answer and participated in the proceeding but never filed a motion to dismiss the interpleader as improper or sought a hearing on the propriety of the interpleader. Instead, Seven Stone filed a counterclaim for declaratory judgment asserting that "[t]here exists an actual and justiciable controversy over entitlement to the interpleaded funds."[3] On appeal, Seven Stone now asks this Court to reverse the trial court's order allowing Cosentino to interplead the funds and dismiss the interpleader complaint, when Seven Stone never challenged the order permitting interpleader in the trial court. Objections to interpleader may be waived by going to a hearing on the merits. 48 C.J.S. *Interpleader* § 38 (2018); *see, e.g.*, *Supreme Lodge Knights of Honor v. Selby*, 69 S.E. 51, 52 (N.C. 1910) (concluding that defendants who "answered and set up their conflicting claims to the fund" waived an alleged defect with regard to the interpleader); *c.f. Henegar v. Brannon*, 137 S.W.2d 889, 891-92 (Tenn. Ct. App. 1939) (concluding that a party who paid funds into court and "asked the chancellor to decree who was entitled thereto" could not complain on appeal that the interpleader was improper).

In any event, however, we conclude that Seven Stone's argument is meritless and that this was a properly filed interpleader action. Again, Tennessee Rule of Civil Procedure 22.01 provides, in relevant part:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he or she is not liable in whole or in part to any or all of the claimants.

The Advisory Commission Comment to the Rule generally states that Rule 22.01 "provides for interpleader of persons having claims against the plaintiff." Tenn. R. Civ.

---

[3] Seven Stone did assert that the interpleader was improperly filed as it related to the issue of whether the stakeholder should be allowed to recover attorney's fees, but at the same time, Seven Stone emphasized the limited nature of its argument, repeatedly noting that it had not filed a motion to dismiss the interpleader on that basis and that this was not the basis for its motion for partial summary judgment.

P. 22.01. The Tennessee Rule is "identical in substance" to Federal Rule of Civil Procedure 22. Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 6-8(b) (4th ed. 2015).[4]

The "modern trend" has been "toward increased availability of interpleader and relaxation of the historic restrictions on its use." Richard D. Freer, 4 *Moore's Federal Practice - Civil* § 22.03[1][h] (2018). According to Professors Banks and Entman, interpleader was historically subject to very "stringent rules that greatly limited the remedy's utility." Banks & Entman, *Tenn. Civ. Proc.* § 6-8(b). Two of these stringent rules were an "identity rule," requiring that the adverse claims be "for the identical thing, debt, or duty in the same amount," and a "privity rule," requiring that all of the adverse claims derive from a common source. *Id.* However, these limitations were "discarded by the adoption of Rule 22.01," as the second sentence of the Rule expressly states that it is not ground for objection that the claims do not have a common origin or are not identical but are independent of one another. *Id.* On appeal, Seven Stone argues that "a proper interpleader must involve . . . the same thing, debt, duty, or stake . . . [and the] claims must be dependent or have a common origin[.]" However, these are no longer requirements for interpleader under Tennessee Rule of Civil Procedure 22.01. *See also* Pivnick, 1 Tenn. Cir. Ct. Prac. § 1:27 ("Under the Rules, interpleader is available regardless of the dependent nature or common origin of the several claims [or] the identity of the thing or fund claimed[.]"); Wright, Miller, & Kane, 7 Fed. Prac. & Proc. Civ. § 1702 (explaining that the trend in federal practice has been to eliminate these technical restraints on interpleader that were not founded on adequate policy considerations).

In modern practice, "[t]he primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder (the so-called 'first stage' of interpleader) is whether the stakeholder legitimately fears multiple vexation directed against a single fund." Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1704; *see also U.S. v. High Tech. Prods., Inc.*, 497 F.3d 637, 642 (6th Cir. 2007). "While interpleader should not be granted automatically, courts should allow it liberally." 48 C.J.S. *Interpleader* § 1.

Seven Stone argues that interpleader was improper because Rule 22.01 provides that "[p]ersons having claims *against the plaintiff* may be joined as defendants and required to interplead[.]" Tenn. R. Civ. P. 22.01 (emphasis added). Seven Stone argues that Distributor's only *claim* was against Seven Stone, not the plaintiff, Cosentino. However, this argument overlooks the undisputed fact that Distributor had *threatened to*

---

[4] "Although not binding precedent, '[f]ederal case law interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule.'" *Jones v. Prof'l Motorcycle Escort Serv., L.L.C.*, 193 S.W.3d 564, 570 (Tenn. 2006) (quoting *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000)).

*file* an attachment action against Cosentino in Texas. "Existing *and prospective* claim[s] from separate parties are generally sufficient" to satisfy the jurisdictional requirement of multiple liability for an interpleader action. 48 C.J.S. *Interpleader* § 9 (emphasis added); *see also* Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1707 ("[C]ourts should not hesitate to allow interpleader even when prospective claims are involved."). Interpleader can be invoked against a claimant who has not yet filed a claim or reduced its claim to judgment:

> [C]ourts should not dismiss an interpleader action simply because the claims confronting plaintiff have not been asserted. Nor is the fact that the claims, whether based on tort or contract, are not liquidated or have not been reduced to judgment relevant to a determination of the initial question whether interpleader should be granted.[5]

Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1707 (footnote omitted). As such, it does not matter that Distributor had not yet filed the threatened attachment action or reduced its claim to judgment. "The plaintiff is not required to wait for legal proceedings to be commenced against him." *Am. Amicable Life Ins. Co. v. Roberson*, No. C.A. 10, 1986 WL 10144, at *2 (Tenn. Ct. App. Sept. 19, 1986) (quotation omitted). It is sufficient that the stakeholder "'is in danger of being molested by the assertion of conflicting rights.'" *Id.* (quoting 45 Am. Jur. 2d *Interpleader* § 7). "The stakeholder should file an interpleader action within a reasonable time after a dispute has arisen, without waiting to be sued." 48 C.J.S. *Interpleader* § 22; *see, e.g.*, *Taylor v. Bishop*, No. 88-364-II, 1989 WL 54911, at *1 (Tenn. Ct. App. May 24, 1989) (concluding that an attorney properly filed a bill of interpleader when she held an IRS check that was claimed by two parties and the attorney "feared she might suffer injury from the conflicting claims"). Because interpleader is intended to avoid "the risk of loss resulting from the threatened prosecution of multiple claims, the risk must be appraised in the light of the circumstances as they are in good faith alleged and shown to exist at the time when the suit was brought." *State of Texas v. State of Fla.*, 306 U.S. 398, 410 (1939). A "theoretical concern or hypothetical claim" is not sufficient to justify interpleader, and

---

[5] In *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531-32 (1967), the United States Supreme Court rejected the notion that an insurer-stakeholder was required to wait until the persons asserting claims reduced those claims to judgment before seeking to invoke the benefits of federal interpleader. If the stakeholder was required to await the reduction of claims to judgment, the Court explained, the first claimant to obtain a judgment or negotiate a settlement could appropriate all or a disproportionate share of the fund before other claimants were able to establish their claims. *Id.* at 533. The difficulties of such a "race to judgment" and the unfairness that might result for some claimants "were among the principal evils the interpleader device was intended to remedy." *Id.* Because Tennessee Rule of Civil Procedure 22.01 references a stakeholder who "is or may be" exposed to multiple liability, Professors Banks and Entman suggest that the same result should be reached by Tennessee courts. Banks & Entman, *Tennessee Civil Procedure* at § 6-8[b].

interpleader may not be maintained on a mere suspicion of double vexation. 48 C.J.S. *Interpleader* § 8. The stake holder must simply have "a good-faith and reasonable fear" of exposure to vexatious or conflicting claims. *Id.* Such fear was present in this case because Distributor threatened to file an attachment action against Cosentino in Texas.

Next, Seven Stone argues that there was no possibility of Cosentino being exposed to double or multiple liability, as stated in Rule 22.01. The Federal Rule likewise references a stakeholder who may be exposed to double or multiple liability, *see* Fed. R. Civ. P. 22, but federal courts "have overcome this perceived limitation" on interpleader by emphasizing its remedial nature and focusing on the word "may" in the rule. *Moore's Federal Practice* at § 22.03[1][d]. "[M]ost [courts] stress that the vexation and expense of possible multiple litigation warrants the use of interpleader even absent a substantial danger of multiple liability."[6] Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1704; *see also Moore's Federal Practice* § 22.02[1] ("Even if multiple liability is unlikely, both the stakeholder and the judicial system avoid the expense and delay of multiple litigation.") Indeed, the Tennessee Supreme Court has recognized that "[t]he office of an interpleading suit is not to protect the parties against a *double liability*, but against double vexation on account of *one liability*." *Newsum v. Interstate Realty Co.*, 278 S.W. 56, 56 (Tenn. 1925) (quotation omitted). The purpose of interpleader is "'for the stakeholder to protect itself against the problems posed by multiple claimants to a single fund.'" *Stonebridge Life Ins. Co. v. Horne*, No. W2012-00515-COA-R3-CV, 2012 WL 5870386, at *11 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012)). That purpose was served here, as interpleader protected Cosentino against double vexation on account of one liability.

On appeal, Seven Stone also argues that an investigation into Texas law would have revealed that Distributor's attachment claim in Texas would have failed. However, "[t]he availability of interpleader does not depend on the merits of the potential claims against the stakeholder." 48 C.J.S. *Interpleader* § 9; *see also Moore's Federal Practice* at § 22.03[1][a] ("Because interpleader is procedural, its availability does not depend on the merits of the claims asserted against the stakeholder.") In other words, "a determination of the respective merits of the adverse claims is inappropriate at the initial stage" of the interpleader proceeding. Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. §

---

[6] For example, in the situation involving insurer-stakeholders,

> [t]he primary policy operating in these cases is not the protection of the stakeholder against multiple liability, because it can plead the payment of prior judgments and subtract them from the insurance fund available to each new plaintiff. Rather, it is the avoidance of multiple litigation and the protection of the individual claimants themselves.

Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1705.

- 10 -

1704. One of the most significant benefits of interpleader is that it "prevents the stakeholder from being obliged to determine at his peril which claimant has the better claim." *Id.* § 1702. The stakeholder "should not be compelled to run the risk of guessing which claimant may recover from the fund." *Id.* § 1704. Interpleader gives the stakeholder "an opportunity to clothe his disbursement with the protection of a judicial determination." 48 C.J.S. *Interpleader* § 1. Accordingly, "[t]he stakeholder is not required to make a determination as to the rights of the prospective claimants but, rather, may deposit the contested funds with the court to avoid acting at his own peril and exposing himself to liability." *Id.* § 2.

In fact, "it is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be quite tenuous." Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1704 (footnote omitted); *see, e.g., Paul Revere Life Ins. Co. v. Riddle*, 222 F. Supp. 867, 868 (E.D. Tenn. 1963) (concluding that a stakeholder had a right to maintain an interpleader action to avoid the vexation and expense of resisting adverse claims "even though its officials believed only one of them was meritorious" and the court recognized that "the plaintiff was never in any real danger of double liability under its contract"). "The mere fact that one of the adverse claims may be without merit, which is the usual situation, may not defeat the right of the stakeholder to invoke the remedy of interpleader which is intended for his protection." 48 C.J.S. Interpleader § 10. Even when the stakeholder denies liability to one of the claimants, "interpleader still protects the stakeholder from the vexation of multiple suits and the possibility of multiple liability that could result from adverse determinations in different courts." Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1702 (footnote omitted). "So long as the stakeholder is confronted with multiple adverse claims or liability, interpleader is proper, even if the stakeholder does not believe that all the claims against the stake are meritorious." *Moore's Federal Practice* at § 22.03[1][a].

"[One] common situation in which the adversity requirement is satisfied is a disputed garnishment or attachment proceeding." Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1705. In modern interpleader practice, claims do not have to arise from a common source or origin and "are considered adverse if one claimant admits that the stakeholder has an obligation to another claimant but asserts its claim through an attachment or garnishment." *Moore's Federal Practice* at § 22.03[1][d]; *see, e.g., Weaver v. Nelms*, 750 S.W.2d 158, 159 (Tenn. Ct. App. 1987) (involving a garnishment issued against the obligee on a promissory note, who then filed a complaint of interpleader to determine the proper party to receive payment); *Pinstein v. Suddarth*, Shelby Equity No. 33, 1985 WL 4334, at *4–5 (Tenn. Ct. App. Dec. 13, 1985) (concluding that interpleader was appropriate where attorneys held settlement proceeds and were served with writs of garnishments seeking to attach the funds).[7]

---

[7] The benefits of interpleader relief for a garnishee are obvious – the garnishee is able to extinguish liability both to the garnishor and to the person to whom the garnishee is obligated in

- 11 -

Returning to the facts before us, we conclude that Cosentino legitimately feared multiple vexation directed against a single limited fund when it was threatened with an attachment action by Distributor. Even Seven Stone represented to the trial court that there was "an actual and justiciable controversy over entitlement to the interpleaded funds." Cosentino appropriately filed an interpleader action so that the court could authoritatively decide how the limited fund was to be distributed. We discern no error in the trial court's order permitting Cosentino to interplead the disputed funds.

### B. Cross Motions for Summary Judgment

In the second stage of an interpleader proceeding, "the court proceeds to adjudicate the claims before it just as it would in any other civil action." *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988). "[T]he court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *High Tech. Prod., Inc.*, 497 F.3d at 641. "[E]ach claimant has the burden of establishing the right to the fund or property by a preponderance of the evidence." Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1714. As in other cases, when there is no genuine issue of material fact, the second stage may be adjudicated on summary judgment motions. *Id.*

Here, Seven Stone filed a motion for partial summary judgment asserting that it had a direct contractual claim to the interpleaded funds owed by Cosentino and that Distributor had no legal right to the specific funds at issue. Seven Stone asserted that Distributor was not an affiliate of Cosentino in the sense that it could offset payments under the Fabrication Agreement. Seven Stone pointed to Distributor's discovery responses indicating that the basis for its claim against the interpleaded funds was simply its intention to file an attachment action in Texas against the funds held by Cosentino. Seven Stone submitted a statement of undisputed material facts, which Distributor did not dispute and the trial court adopted. According to this statement of facts, Cosentino incurred 88 invoices under its Fabrication Agreement with Seven Stone reflecting that Cosentino owed Seven Stone $153,008.34.

Notably, the cross-claim asserted by Distributor to the interpleaded funds was simply in the nature of a breach of contract claim, and Distributor did not seek an attachment under Tennessee law, as it had threatened to seek in Texas. Distributor filed its own motion for summary judgment seeking a judgment for the principal amount owed by Seven Stone to Distributor in addition to accrued interest charges. Distributor pointed to Seven Stone's discovery responses admitting that it owed Distributor $129,093.49 as of August 1, 2016. Distributor also filed a statement of undisputed material facts, to which Seven Stone did not respond, and which the trial court adopted. According to these undisputed facts, Seven Stone purchased merchandise from Distributor on open

a single proceeding. Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1705.

account, owed Distributor an unpaid balance of $129,093.49, agreed to pay finance charges on the aged unpaid balances, and owed Distributor a total of $155,941.26 in principal and finance charges as of June 27, 2017.

In support of its claim of sole entitlement to the interpleaded funds, Seven Stone heavily relied on *John Weis, Inc. v. Reed*, 118 S.W.2d 677 (Tenn. Ct. App. 1938). In *Reed*, a Tennessee corporation brought suit against Ms. Reed and an insurer, seeking an attachment of Ms. Reed's interest in a sum of $800 that she was due under a fire policy. *Id.* at 679. The insurer filed an answer and sought a bill of interpleader, admitting that it owed the sum to Mrs. Reed but stating that numerous other creditors had demanded payment from the sum and that it could not safely judge the claims of her creditors. *Id.* The trial court sustained the cross-bill as a bill of interpleader, entered judgments in favor of various creditors, and ordered distribution of the $800 paid in to court among the various creditors. *Id.* On appeal, Mrs. Reed argued that the creditors were not entitled to share pro rata in the insurance money. *Id.* at 680. The Court of Appeals explained that in an interpleader action, the creditor-claimants are "in the position of a plaintiff in possessory actions, and must recover on the strength of their own title rather than on the weakness of that of the adversary." *Id.* at 681. Ultimately, the Court of Appeals concluded that the defendant-claimants "had a right to take judgment against Mrs. Reed on their petitions," but that the attachment claims should have been dismissed because there was no evidence that Mrs. Reed was about to fraudulently dispose of her property. *Id.* The Court of Appeals found that two of the claimants had contractual liens on the proceeds of the insurance policy, but that the others were only entitled to judgments without any liens on the policy proceeds. *Id.* at 682. The Court of Appeals concluded by stating:

> We think the Chancellor erred in ordering the distribution of the proceeds of the policy among all these creditors, for the reason that they had no liens on the proceeds of the policy, with the exception of the two parties above named. The fact that Mrs. Reed owed them did not give them a right to any interest in the proceeds of the policy unless they had liens thereon, and the Chancellor's decree is therefore modified as herein decreed.

*Id.* In sum, the Court of Appeals affirmed the decree sustaining the cross-bill as a bill of interpleader and ordering the $800 paid into court, dismissed the attachment claim, held that two claimants were entitled to liens to the extent of their respective judgments, and affirmed the decrees awarding the other claimants the respective amounts due. *Id.* However, the Court of Appeals reversed the decree ordering distribution of the policy proceeds among the various creditors pro rata. *Id.* After the two liens were satisfied, the remainder of the policy proceeds would be paid to Mrs. Reed, "unless retained as a result of further appropriate proceedings." *Id.*

After a hearing in this case, the trial court granted summary judgment to

Distributor and denied the motion for partial summary judgment asserted by Seven Stone. Having concluded that interpleader was proper, the trial court concluded that it was left with the competing claims of Distributor and Seven Stone. The trial court acknowledged the *Reed* case cited by Seven Stone but said, "The Court does not agree with Seven Stone that [Distributor] should be required to establish a lien or an assignment in order to establish a claim to the funds as in the insurance cases. See *John Weis, Inc. v. Reed*, 118 S.W.2d 677 (Tenn. Ct. App. 1938). This case is very different from those insurance cases." The trial court reasoned that "once these parties have joined the issue in an interpleader, then it is like any other lawsuit, a lawsuit that has competing claims, one against the other." The trial court agreed with Seven Stone's assertion that it had "a right to the funds" through its contract with Cosentino. However, the court added, Distributor also had a legitimate claim against Seven Stone for a debt. As a result, the trial court found it appropriate to award Distributor a judgment for the amount it was owed from and against the interpleaded funds. The trial court found that Seven Stone did not deny that it owed $129,093.49 to Distributor for the amount due on its open account. However, the trial court was "not convinced" from the documents submitted that Seven Stone agreed to pay any late fee. As such, the trial court limited its award to Distributor to $129,093.46 to be paid from the interpleaded funds, and Seven Stone was awarded the remainder.

We perceive two errors in this disposition. First, we conclude that the trial court erred in ordering the judgment in favor of Distributor to be paid from the interpleaded funds. We find the *Reed* case analogous rather than distinguishable, even though the underlying facts in that case involved an insurance policy. Like the majority of the creditor-claimants in the *Reed* case, Distributor had a right to a judgment against Seven Stone, but it did not successfully assert any lien or attachment claim to the interpleaded funds. Being named an interpleader defendant in stage one of the proceeding does not necessarily entitle a claimant to a portion of the interpleaded funds in stage two. *See Berryman v. Lannom*, 94 So. 3d 1238, 1242 (Miss. Ct. App. 2012). "Interpleader does not create liability when it would not exist under state substantive law. Instead, it merely accelerates assertion of a claim[.]" *Moore's Federal Practice* at § 22.03[1][e]. At the second stage of the proceeding, "each claimant has the burden of establishing the right *to the fund or property* by a preponderance of the evidence." Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1714 (emphasis added). "To entitle a claimant to a decree, he must have a title or lien, legal or equitable, with respect to the fund deposited." 48 C.J.S. *Interpleader* § 45. Distributor did not establish a right to the interpleaded fund originally held by Cosentino and owed to Seven Stone pursuant to the contract. As in *Reed*, the fact that Seven Stone owed money to Distributor did not give it "a right to any interest in the [interpleaded funds]" in the absence of a lien, attachment, or similar claim. 118 S.W.2d at 682. Therefore, the trial court should not have ordered the judgment in favor of Distributor to be paid from the interpleaded funds.

The second issue we perceive relates to the late fees. As noted above, Seven

- 14 -

Stone did not file a response to the statement of undisputed material facts submitted in support of the motion for summary judgment filed by Distributor. "Generally, 'the material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party.'" *SunTrust Bank v. Ritter*, No. E2017-01045-COA-R3-CV, 2018 WL 674000, at \*5 (Tenn. Ct. App. Feb. 1, 2018) (quoting *Holland v. City of Memphis*, 125 S.W.3d 425, 427 (Tenn. Ct. App. 2003)). When announcing his oral ruling, the trial judge stated that he adopted the parties' statements of fact because neither party challenged the statement submitted by the other. The trial court was clearly justified in doing so. *See id.* At the outset of its written order, the trial court similarly noted that each party submitted statements of undisputed material fact and that neither party interposed a denial to the other's statement of facts. The statement of undisputed facts submitted by Distributor stated, in relevant part:

> 3. It is undisputed that Seven Stone agreed to pay finance charges on the aged unpaid balances. See Declaration of Valerie Barnes, and attached exhibits.
> 4. It is undisputed that as of June 27, 2017, Seven Stone owed Natural Stone the sum of $155,941.26 which includes principal of $129,093.49 plus finance charges. See Declaration of Valerie Barnes.

The attached documents included the sworn declaration of Valerie Barnes and documents maintained in the regular course of business of Distributor, including the account balance statement for Seven Stone. The trial court stated that it was "not convinced" that Seven Stone agreed to pay late fees and that this was "a unilateral statement provided through the documents of [Distributor] to which there does not appear to be any acquiescence on the part of Seven Stone." However, the statement of undisputed facts, which the trial court adopted, expressly stated: "It is undisputed that Seven Stone agreed to pay finance charges on the aged unpaid balances." Seven Stone did not submit any evidence to demonstrate that it did *not* agree to the finance charges. It did not file a response to the motion for summary judgment, submit any evidence to dispute Distributor's documents, or respond to the statement of undisputed facts in order to dispute its statements. Because the trial court stated that it was adopting the parties' statements of material fact, we conclude that the trial court should have also found that Seven Stone agreed to pay finance charges and owed Distributor $155,941.26.

In sum, we conclude that Distributor was entitled to a judgment against Seven Stone for $155,941.26, but we conclude that Distributor was not entitled to payment of this sum from the interpleaded funds. As in *Reed*, the interpleaded funds must be paid to the party to whom it was owed absent some further proceedings.

The trial court should have granted the motion for partial summary judgment filed

by Seven Stone with respect to its exclusive right to the interpleaded funds, and we reverse the trial court's holding to the contrary. We affirm the trial court's order granting the motion for summary judgment filed by Distributor to the extent that it granted a judgment in favor of Distributor, but we modify the award to a sum of $155,941.26 and further modify the order to reflect that this amount is not to be paid from the interpleaded funds held by the court absent further proceedings in the trial court.

### C. Unclean Hands

Finally, we note Distributor's issue on appeal regarding whether the trial court should have held *sua sponte* that Seven Stone was not entitled to any relief in this case on the basis of unclean hands. We cannot say that the trial court erred in failing to apply this doctrine when it was not mentioned in the motion for summary judgment filed by Distributor and no actual evidence (i.e., documentary or testimonial) was submitted to the trial court to prove the facts alleged with regard to this issue.

### IV. CONCLUSION

For the aforementioned reasons, the judgment of the trial court is hereby reversed in part, affirmed as modified, and remanded for further proceedings. Costs of this appeal are taxed equally to the appellant, Seven Stone Surface Fabrication, LLC, and to the appellee, Natural Stone Distributors, LLC, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE